STATE of Wisconsin, Plaintiff-Respondent,

v.

Wayne J. DANFORTH, Defendant-Appellant-
Petitioner.

Supreme Court

*No. 85–0210–CR. Argued February 11, 1986.—Decided April
16, 1986.*

(Also reported in 385 N.W.2d 125.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Leonard D. Kachinsky,* Neenah.

For the plaintiff-respondent the cause was argued by *Kirbie Knutson,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

DAY, J.   This is a review of a published decision of the court of appeals, 125 Wis. 2d 293, 371 N.W. 2d 411 (Ct. App. 1985), affirming the judgment of the circuit court of Outagamie county, Honorable Nick F. Schaefer, circuit judge, convicting Wayne J. Danforth (Defendant) of cruelly maltreating a child, on the morning of July 9, 1983, contrary to sec. 940.201, Stats., 1981–1982.[1] The following issues are raised on review: (1) Is specific intent to cruelly maltreat a child an element of child abuse under sec. 940.201, Stats.; (2) If specific intent is not an element, did the trial court err in admitting evidence that the Defendant struck the child on the buttocks, causing bruising earlier in the morning of July 9, 1983, and that he struck the child in the face, causing two black eyes several months earlier, and if so, was the error prejudicial to the Defendant; and (3) Was the Defendant entitled to have the jury instructed on battery, sec. 940.19(1), Stats.[2] We conclude

---

[1]  Section 940.201, Stats., provides:

" **940.201    Abuse of children.** Whoever tortures a child or subjects a child to cruel maltreatment, including, but not limited, to severe bruising, lacerations, fractured bones, burns, internal injuries or any injury constituting great bodily harm under s. 939.22(14), is guilty of a Class E felony. In this section, 'child' means a person under 16 years of age."

[2]  Section 940.19, Stats., provides:

" **940.19    Battery; aggravated battery.** (1) Whoever causes bodily harm to another by an act done with intent to cause bodily harm

that specific intent is not an element of child abuse, that although the alleged prior acts of child abuse were erroneously admitted into evidence pursuant to sec. 904.04(2), Stats.,[3] such error was harmless, and that the Defendant was not entitled to an instruction on battery because it is not a lesser included offense of child abuse.

On the evening of July 9, 1983, the victim, (N.S.), age two years and ten months, was brought to the emergency room of St. Mary's Hospital in Green Bay, Wisconsin, by his mother and the Defendant, because the child had been vomiting all day. Both a nurse and Doctor Gordon Haugan, a pediatrician, testified that the child's buttocks were covered with bruises of various ages. Doctor Haugan further testified that it was his opinion that the newer bruises were incurred within several hours of the child's being brought to the hospital. Doctor Haugan also observed that N.S.'s abdomen was bloated and diffusely tender.

Exploratory surgery, performed by Doctor John C. Bishop, revealed a one-fourth inch hole in the child's small intestine, which according to Doctor Bishop, was not more than twenty-four hours old. Both Doctor Hau-

---

to that person or another without the consent of the person so harmed is guilty of a Class A misdemeanor."

[3] Section 904.04(2), Stats., provides:

"**904.04 Character evidence not admissible to prove conduct; exceptions; other crimes....** (2) OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

gan and Doctor Bishop agreed that a perforated intestine was a potentially fatal injury. It was Doctor Bishop's opinion that the perforation was caused by trauma. It was Doctor Haugan's opinion that N.S. was struck in the abdomen, and that a fist could have caused the injury. When the child was asked, by a nurse, where he had received his "bad owie," he responded that "daddy hit me."[4]

On July 12, 1983, the Defendant was questioned by Sergeant Ronald L. Springer of the Outagamie County Sheriff's Department and Gregory Otto, an Outagamie county social worker. Sergeant Springer testified that the Defendant gave the following version of what occurred on July 9, 1983: Approximately two hours after N.S. had eaten breakfast, he came into the house, after having fallen on a toy and vomited. Defendant stated that the vomiting was the result of N.S.'s having been accidently given sour milk at breakfast. He stated that the child vomited about five times and that each time he gave the child approximately three stomach thrusts to assist the vomiting. (Sergeant Springer described these thrusts as being similar to the Heimlich maneuver used to dislodge material in a choking person's throat). At first, Defendant denied striking the child, but when pressed he admitted spanking the child twice on the buttocks during the "confusion" of the child's crying and vomiting.

Defendant's version of the events was inconsistent with statements by others. On July 20, 1983, the Defendant was again questioned by Sergeant Springer

---

[4] The Defendant, who was living with the child's mother at the time of the injury, is not the father of the child. However, there is no suggestion in the record that the child was referring to anyone other than the Defendant when he said "daddy hit me."

and the social worker and was confronted with the inconsistencies. The Defendant's reply was something to the effect of "[e]very time I'm drinking is the only time that I get involved with the child." Sergeant Springer testified that the Defendant then gave the following version of the facts. That on the morning of July 9, 1983, he had a "hangover," and while he and the child's mother were in bed, N.S. came to the bedroom door and said that he had to "go potty." Before the Defendant got out of bed, the child urinated on the floor. Defendant struck the child twice on the right buttock. Defendant further stated that the child vomited on the living room floor shortly after breakfast. Defendant stated that while he was cleaning up the vomit he was very angry with the child because he threw up on the floor and because he "gave the finger" to the Defendant. Defendant said he responded by striking the child "quite hard" in the stomach. (On cross-examination, Sergeant Springer testified that Defendant said he made a partial fist and struck the child with the back side of the edge of his hand.) According to Sergeant Springer, Defendant stated that when the child vomited again he used the "Heimlich maneuver" on the child.

On July 22, 1983, the Defendant was arrested. The information filed in this case charged that the Defendant "intentionally subject[ed] a child [N.S.] to cruel maltreatment, including internal injuries, contrary to Wisconsin Statute Section 940.201." At trial, both the state and the Defendant assumed that intent to cruelly maltreat was an element of sec. 940.201, Stats. Thus, while the Defendant pleaded not guilty, he did not deny striking the child in the abdomen, but rather denied

that he intended to cause the internal injury.[5] The trial judge allowed in evidence of other similar acts under sec. 904.04(2), as relevant to the issue of intent. That evidence was the bruising of the child's buttocks inflicted by the Defendant on the morning of July 9, 1983, and an incident that occurred in April of 1983 when the Defendant struck N.S. in the face causing two black eyes after N.S. gave the Defendant "the finger."

The court employed the uniform jury instruction on child abuse and instructed the jury, in part:

> "The second element requires that the defendant intentionally subjected [N.S.] to cruel maltreatment.
>
> " 'Cruel maltreatment' means the intentional infliction of severe physical injury. 'Severe physical injury' means severe bruises, lacerations, fractured bones, burns, internal injuries, pain or other serious bodily harm.
>
> " 'Intentional' as used here means that the acts of the defendant were not inadvertent or accidental but were done with the purpose to cruelly maltreat [N.S.]." Wis. J.I. Criminal 1221 (1982).

The court refused Defendant's request to instruct the jury on battery, on the grounds that battery is not a lesser included offense of child abuse. The jury returned a verdict of guilty, and the Defendant was sentenced to prison for an indeterminate term of not more than two years.

Defendant moved for a new trial alleging that the evidence of alleged prior acts of child abuse were im-

---

[5] Although the Defendant did not testify, his counsel, in his opening statement, conceded that "on July 9, 1983, in the Town of Oneida, in Outagamie County, Wisconsin, the defendant, Wayne J. Danforth, struck a child [N.S.] causing internal injuries."

properly admitted and that a battery instruction should have been given because it is a lesser included offense of child abuse. In denying the motion, the trial court concluded that the other wrongs evidence was properly admitted to show intent, and that battery is not a lesser included offense of child abuse.

Defendant raised these claimed errors on appeal to the court of appeals, and further alleged the alternative argument that battery is a closely related offense to child abuse on which he was entitled to an instruction, if requested by him, as a matter of due process. The state claimed, for the first time, that intent is not an element of sec. 940.201, Stats.

The court of appeals held that specific intent to cruelly maltreat is not an element of child abuse. It based its holding on the fact that none of the terms designated in sec. 939.23(1), Stats.,[6] to signify that "criminal intent is an element of a crime in chs. 939 to 948 . . ." are included in sec. 940.201, and on this court's holding in *State v. Stanfield,* 105 Wis. 2d 553, 561, 314 N.W. 2d 339 (1982) that intent is not an element of sec. 948.02, which prohibits any person from "treat[ing] any animal . . . in a cruel manner." Because specific intent is not an element of sec. 940.201, the court of appeals held that the trial court erred in admitting evidence that the Defendant struck the child on two previous occasions. It held that the error was harmless. The court of appeals reaffirmed the trial

---

[6] Section 939.23, Stats., provides:

"**939.23  Criminal intent.** (1) When criminal intent is an element of a crime in chs. 939 to 948, such intent is indicated by the term 'intentionally,' the phrase 'with intent to,' the phrase 'with intent that,' or some form of the verbs 'know' or 'believe.' "

court's refusal to instruct the jury on battery, because none of the elements of battery are elements of child abuse.

The first question is whether specific intent to cruelly maltreat a child is an element of sec. 940.201, Stats., which provides:

> " 940.201.   **Abuse of children.** Whoever tortures a child or subjects a child to cruel maltreatment, including, but not limited, to severe bruising, lacerations, fractured bones, burns, internal injuries or any injury constituting great bodily harm under s. 939.22(14), is guilty of a Class E felony. In this section, 'child' means a person under 16 years of age."

In arguing that specific intent is an element, Defendant relies on the uniform jury instruction that defines cruel maltreatment as the "intentional infliction of severe physical injury," and on this court's decision of *State v. Killory,* 73 Wis. 2d 400, 243 N.W. 2d 475 (1976), alleging that it approved *sub silento* a similar instruction. Defendant further argues that the removal of the word "intentionally" from the original bill was to avoid repetitive references to words implying intent, and that intent may be implied due to the seriousness of the penalty.[7] Defendant also alleges that the court of appeals' reliance on *Stanfield* was inappropriate because sec. 948.02,[8] does not contain the active verbs

---

[7] Child abuse is a Class E felony which carries a possible penalty of "a fine not to exceed $10,000 or imprisonment not to exceed 2 years, or both." Section 939.50(2)(e), Stats.

[8] Section 948.02, Stats., provides:

" **948.02   Mistreating animals.** No person may treat any animal,

of "tortures" and "subjects" found in sec. 940.201.[9] The state agrees with the reasoning of the court of appeals, and further states that the legislative history shows that the legislature did not intend to make specific intent an element, and that non-intent crimes may carry substantial penalties.

We apply the analysis used in *Stanfield,* 105 Wis. 2d at 560–561, of looking at the language of the statute and the legislative history, and conclude that the legislature did not intend to require intent to cruelly maltreat a child as an element of sec. 940.201, Stats. *See also, State v. Alfonsi,* 33 Wis. 2d 469, 476, 147 N.W. 2d 550 (1967). The legislature is concerned only with the results of the Defendant's conduct and not with

whether belonging to himself or another, in a cruel manner. This section does not prohibit bona fide experiments carried on for scientific research or normal and accepted veterinary practices."

[9] In addition, Defendant erroneously alleges that Michigan and California courts have construed similar child abuse statutes as requiring specific intent to sustain a conviction. While the Defendant cites a Michigan Court of Appeals' decision, *People v. Webb,* 128 Mich. App. 721, 341 N.W. 2d 191, 194 (1983), for the proposition that proof of specific intent is required to sustain a child abuse conviction, there are other Michigan Court of Appeals' decisions that hold specific intent is not an element. *See, People v. Jackson,* 140 Mich. App. 283, 364 N.W. 2d 310, 311–312 (1985); *People v. Alderete,* 132 Mich. App. 351, 347 N.W. 2d 229 (1984).

Defendant relies on *In re James M.,* 65 C.A. 3d 254, 135 Cal. Rptr. 222, 229 (1978), for the conclusion that the California child abuse statute requires a showing of specific intent. *In re James M.,* does not even involve California's child abuse statute. In *People v. Pointer,* 151 Cal. App. 3d 1128, 1134, 199 Cal. Rptr. 357 (1984), the court of appeals, in construing California's cruelty to children statute, sec. 273(a)(1), held that the statute which uses the term "willful," only requires a showing of a willingness to commit the act, not intent to injure.

whether the Defendant intended to produce such results.

In *Alfonsi,* 33 Wis. 2d at 476, this court stated that requiring the element of criminal intent is the rule in our criminal jurisprudence. However, this court has also recognized the legislature's right to create crimes which do not require the element of criminal intent. *Dept. of Transp. v. Transp. Comm'n.,* 111 Wis. 2d 80, 99–100, 330 N.W. 2d 159 (1983).

Section 940.201, Stats., is a part of the criminal code. Section 939.23(1), provides guidance to determine whether the legislature intended criminal intent to be an element of an offense set forth in the criminal code.[10] It provides:

> "**939.23 Criminal intent.** (1) When criminal intent is an element of a crime in chs. 939 to 948, such intent is indicated by the term 'intentionally,' the phrase 'with intent to,' the phrase 'with intent that,' or some form of the verbs 'know' or 'believe.'"

In the case of *Flowers v. State,* 43 Wis. 2d 352, 360, 168 N.W. 2d 843 (1969), this court held that criminal intent is not an element of the crime of indecent behavior with a child. The court quoted with approval the fol-

---

[10] At oral argument, the Defendant relied on this court's decision in *State v. Collova,* 79 Wis. 2d 473, 255 N.W. 2d 581 (1977), for the conclusion that a statute need not contain the words of intent set forth in sec. 939.23(1), Stats., for this court to find that specific intent is an element. *Collova* can be distinguished from this case. In *Collova,* this court interpreted a provision of the vehicle code rather than the criminal code.

"In *Collova,* this court recognized the validity of sec. 939.23, but held it inapplicable to that case because the statute at issue was part of the vehicle, rather than the criminal code." *Stanfield,* 105 Wis. 2d at 560. (Citation omitted.)

lowing language from the dissent in *State v. Alfonsi,* 33 Wis. 2d at 486: "Whenever the code intends a crime to include a specific criminal intent, it so provides or exact language is used which comes under sec. 939.23, Stats., which defines when intent is an element of a crime." *Flowers,* 43 Wis. 2d at 360; *see also, Brown v. State,* 59 Wis. 2d 200, 214, 207 N.W. 2d 602 (1973) (criminal intent is not an element of rape). None of the terms set forth in sec. 939.23(1), as indicative of the element of intent appear in the child abuse statute. The original bill, 1969 Assembly Bill 544, to create sec. 940.201, explicitly required proof of criminal intent. It read: "Whoever *intentionally* tortures, torments or subjects to physical abuse or cruel maltreatment any child may be fined not more than $500 or imprisoned not more than one year in county jail or both. In this section, 'child' means a person under 18 years of age." (emphasis added). The drafting record for 1969 Wis. Laws 456, which created sec. 940.201, sheds light on why the word "intentionally" was inserted into the bill. A drafting memo, the author of which is not identified, suggested that in light of this court's decision in *Alfonsi,* it seemed reasonable to include the word "intentionally" in the submitted draft, "particularly since such element is included in the parallel crime of battery under sec. 940.20." In *Alfonsi,* this court was confronted with the issue of whether criminal intent is an element of bribery.

Subsequently, the late Assemblyman George Molinaro, the sponsor of the bill, introduced an amendment to delete the word "intentionally," and it was removed. This is of great significance because "intentionally" was inserted to show tht criminal intent was an element of child abuse. Thus, its deletion suggests that the legis-

lature did not intend specific intent to be an element. *See, Pittman v. Lieffring,* 59 Wis. 2d 52, 63–64, 207 N.W. 2d 610 (1973).

This conclusion is consistent with the motivation for introducing the child abuse statute. The drafting record for 1969 Wis. Laws 456 shows that the statute was suggested by Ms. Arlene Jensen, a reporter for the *Kenosha News,* who was concerned with the inadequacy of Wisconsin laws dealing with abuse of children. The drafting record contains a letter written by Ms. Jensen to Assemblyman George Molinaro in which she noted that a person could be criminally convicted for the murder, manslaughter or intentional aggravated battery of a child, but expressed concern for those "youngsters who are helpless victims of a father who 'didn't mean to hit him so hard,' or the mother who feels it is 'her duty to beat the children' to instill discipline." Ms. Jensen concluded with the plea that we "need legislation to restrain the parent who would beat children with his hands, with belts, sticks or other objects who would tie a child to his bed, who would mete out cruel punishments in the name of discipline." The situations posed by Ms. Jensen are those in which the abuser lacks criminal intent.

This court has previously determined that the word "cruel" does not import malice as an element of the crime, but rather it modifies the word maltreatment. *Killory,* 73 Wis. 2d at 413. While the statute does not define the words "torture" and "cruel maltreatment," it is a well recognized rule that nontechnical words are to be construed according to their common and ordinary usage, and that such meanings may be established by using a recognized dictionary. *Id.* This court has previously defined maltreat to mean "to treat

badly or to abuse another" and "cruelly" to mean "to cause pain or hurt." *Id.* at 406. In further describing the conduct prohibited by sec. 940.201, Stats., this court has stated that "[t]he language used in the statute connotes conduct which is *abhorrent to the sensitivities of the general public.* It is not language which would embrace conduct that reasonable persons would consider appropriate methods of child discipline." *Id.* at 407. (Emphasis added.) Since this court has not defined "torture," we turn to the dictionary definition. *Webster's Third New International Dictionary* 2414 (1976) defines torture as to "punish or coerce by inflicting excruciating pain" and "to cause intense suffering to," "subject to severe pain." None of these definitions connote that a person must intend severe pain or hurt. For example, a person may subject a child to excruciating pain with the intent to discipline the child, not with the intent to cause the injury. This is exactly the type of treatment Ms. Jensen sought to protect innocent children from enduring.

In *Stanfield,* 105 Wis. 2d at 560, this court stated that the predecessor of sec. 948.02, Stats., sec. 947.10(1)(a), Stats., (1971) explicitly required proof of specific intent. Section 947.10(1)(a), provided in part: "Whoever does any of the following . . . . (a) *Intentionally* tortures any animal. . . ." (emphasis added). If the legislature intended tortures to connote specific intent, it would never have used the language "intentionally tortures." "[S]tatutes should be construed in a manner which will avoid a construction that makes a word or phrase superfluous." *Green Bay Broadcasting v. Green Bay Authority,* 116 Wis. 2d 1, 19, 342 N.W. 2d 27 (1983), modified, 119 Wis. 2d 251, 349 N.W. 2d 478 (1984).

Defendant supports his argument that specific intent is an element of sec. 940.201, Stats., by citing the uniform jury instruction that defines cruel maltreatment as the "intentional infliction of severe physical injury." While uniform jury instructions are given weight by this court, these instructions are not necessarily definitive. *State v. Kanzelberger*, 28 Wis. 2d 652, 659, 137 N.W. 2d 419 (1965), cert. denied, 385 U.S. 867 (1966). We conclude that the uniform jury instruction for sec. 940.201, is erroneous in that it requires a finding of the intentional infliction of severe physical injury.

Based on the foregoing, we conclude that the legislature did not intend to require intent to cruelly maltreat as an element of child abuse under sec. 940.201, Stats. *See also, Stanfield,* 105 Wis. 2d at 560–561. The mere fact that sec. 940.201, carries a possible two year prison sentence does not require reading the element of intent into the crime. *Stanfield,* 105 Wis. 2d at 561, n. 10. Therefore, the state only had to prove two elements: 1) that the Defendant subjected the child to cruel maltreatment, and 2) that the child was under the age of sixteen.

Since specific intent to cruelly maltreat is not an element of sec. 940.201, Stats., and the trial court admitted evidence that the Defendant struck the child on two previous occasions to show intent, such evidence was erroneously admitted for that purpose. As a general rule, evidence of other wrongs is not admissible to prove a person's character to show that one acted in conformity with one's character in committing the act in question. *State v. Alsteen,* 108 Wis. 2d 723, 728, 324

N.W. 2d 426 (1982). However, sec. 904.04(2), does allow the admission of other "crimes, wrongs or acts" evidence if used for the purpose of showing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

▪ Trial courts must apply a two-step test to determine whether other wrongs evidence is admissible. *Alsteen,* 108 Wis. 2d at 729. First, the trial court must fit the evidence within one of the sec. 904.04(2), Stats., exceptions. Then it must determine whether any prejudice resulting from the admission of such evidence substantially outweighs its probative value. Section 904.03, Stats.[11] Implicit in this two-step test is the requirement that the other wrongs evidence be relevant to the case. *Alsteen,* 108 Wis. 2d at 729. " 'Relevant evidence' means evidence having any tendency to make the *existence of any fact that is of consequence* to the determination of the action more probable or less probable than it would be without the evidence." Section 904.01. (Emphasis added.)

▪ Defendant argues that except for intent to cause severe physical injuries, none of the exceptions stated in sec. 904.04(2), Stats., were disputed by the Defendant. The state concedes that if intent is not an element then the evidence that Defendant had hit the child in

---

[11] Section 904.03, Stats., provides:

" **904.03 Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

the face in April, 1983, was irrelevant. However, the state alleges that the evidence that the Defendant slapped the child on the buttocks was admissible to place the abdominal blow in context.

We conclude that the evidence that the Defendant struck the child on two prior occasions was not relevant to any issue in the case. Since the Defendant did not deny striking the child and causing the internal injury, the only issue was whether his conduct constituted child abuse, i.e., his conduct with the resulting injury was the type of conduct that this court has referred to as "abhorrent to the sensitivities of the general public." The act that caused the injury was a deliberate act, not within any acceptable "norm" of corporal punishment, it was not done inadvertently or accidently, it was indeed "abhorrent" by any standard. Evidence of the Defendant's prior acts was not admissible under sec. 904.04(2), Stats., contrary to what the state argued, because intent is not an element of the offense as we decide in this case. Thus, the other wrongs evidence was irrelevant and should have been excluded.[12]

---

[12] This court has repeatedly applied the "greater latitude of proof" standard in fitting other crimes evidence into one of the exceptions stated in sec. 904.04(2), Stats., when dealing with sex crimes, especially when minors are involved.

"A 'greater latitude of proof as to other like occurrences' is clearly evidence in Wisconsin cases dealing with sex crimes, particularly those involving incest and indecent liberties with a minor child. This is not so much a matter of relaxing the general rule that it is not competent in a prosecution for one crime to introduce evidence of other offenses as it is a matter of placing testimony concerning other acts or incidents within one of the well established exceptions to such rule. . . ." *Hendrickson v. State,* 61 Wis. 2d 275,

Even though the other wrongs evidence was erroneously admitted, we conclude that the evidence was not prejudicial to the Defendant.

In *State v. Fishnick,* 127 Wis. 2d 247, 378 N.W. 2d 272 (1985), this court reiterated that the test for non-constitutional harmless error is whether there is a reasonable possibility that the error contributed to the conviction. If there is no reasonable possibility that the error contributed to the conviction, then the error is harmless. The reasonable possibility test focuses on whether the error "undermine[s] confidence in the outcome" of the case. *State v. Dyess,* 124 Wis. 2d 525, 545, 370 N.W. 2d 222 (1985) (quoting from *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 2068 (1984)). We conclude that the outcome in this case was not undermined by the admission of the other wrongs evidence.

The testimony showed that the Defendant gave inconsistent statements as to how the child was injured

---

279, 212 N.W. 2d 481 (1973) (footnote omitted); *See also, State v. Fishnick,* 127 Wis. 2d 247, 378 N.W. 2d 272, 277 (1985); *Day v. State,* 92 Wis. 2d 392, 404, 284 N.W. 2d 666 (1979); *State v. Tarrell,* 74 Wis. 2d 647, 658, 247 N.W. 2d 696 (1976); *Proper v. State,* 85 Wis. 615, 55 N.W. 1035 (1893).

For example, in *Hendrickson,* where the defendant was charged with incest, this court held that the trial court did not err in admitting into evidence testimony of prior incestuous acts by the defendant with his daughter, nor in admitting testimony by her sisters as to incestuous acts of the defendant towards them since this evidence showed a "general scheme or plan" and showed "motive or intent." In the present case, we are not confronted with a defendant who denies committing the alleged offense, striking the child and causing internal injuries, or claiming he struck the child by mistake or accident. Thus, we are not confronted with the question of whether the "greater latitude of proof" standard should be used in child abuse cases.

on July 9, 1983. When the Defendant was informed that his first statement was inconsistent with the statements of other persons, he admitted that he struck the child in the stomach after the child gave him "the finger." In both statements he admitted using stomach thrusts to assist the child in vomiting. While the Defendant did not testify, his counsel's opening statement conceded that the Defendant struck the child, causing internal injuries. It was only the intent to cause the injuries that the Defendant denied. Furthermore, the Defendant wrote an incriminating letter to the trial judge, which the prosecutor read to the jury, in which the Defendant admitted that he knew what he did to the child was "wrong". Also, a nurse testified that in response to her question of where did he get the "bad owie," the child told her that "daddy" hit him.

There was competent medical evidence to show the severity of the injury. Both doctors testified that a perforated intestine was a potentially fatal injury. A stipulation was filed stating that the child's injury was a life threatening injury. In view of this overwhelming evidence, there is no reasonable possibility that the "result of the proceeding would have been different" if the error had not occurred. *Dyess,* 124 Wis. 2d at 544 (quoting from *Strickland,* 466 U.S. 668, 104 S. Ct. at 2068). The striking of a child, age two years and ten months, in the stomach with sufficient force to cause internal injuries is conduct that is abhorrent to the sensitivities of the general public. The conviction was not undermined by the other wrongs evidence.

Defendant's final argument is that the trial court's refusal to instruct the jury on battery denied him due process of law in that his right to be found guilty be-

yond a reasonable doubt was undermined. While Defendant agrees with the court of appeals' analysis of the elements of child abuse and battery, and concedes that battery is not a lesser included offense of child abuse under the "elements only" approach, Defendant argues that he should have been entitled to the instruction because battery is a closely related offense. *See, United States v. Whitaker,* 447 F. 2d 314, 319 (D.C. Cir. 1971) which held that the test for a lesser included offense is met where there is an "inherent relationship" between the greater and lesser offenses. The offenses "must be so related that in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense." *Id.*

One criminal act may constitute more than one crime. If one of the crimes is a lesser included offense of another, the defendant may not be convicted of both. However, if the same act constitutes two offenses, neither of which is a lesser included offense of the other, then the defendant has committed separate offenses and may be convicted of either or both. *Geitner v. State,* 59 Wis. 2d 128, 130–131, 207 N.W. 2d 837 (1973). This court has consistently followed the "elements only" analysis of what constitutes a lesser included offense in contrast to the *Whitaker* approach. We conclude the "elements only" test is the better rule. "[A]n offense is a 'lesser included' one only if all of its statutory elements can be demonstrated without proof of any fact or element in addition to those which must be proved for the 'greater' offense." *Hagenkord v. State,* 100 Wis. 2d 452, 481, 302 N.W. 2d 421 (1981); *See also, State v. Richards,* 123 Wis. 2d 1, 5–7, 365 N.W. 2d 7 (1985); *Hawthorne v. State,* 99 Wis. 2d 673, 680, 299 N.W. 2d

866 (1981); *Randolph v. State,* 83 Wis. 2d 630, 643, 266 N.W. 2d 334 (1978); *Geitner v. State,* 59 Wis. 2d at 130; sec. 939.66(1), Stats. Since we have concluded that specific intent to cruelly maltreat is not an element of sec. 940.201, Stats., we affirm the court of appeals' holding that battery, sec. 940. 19(1), which requires the intent to cause bodily harm, is not a lesser included offense of sec. 940.201.

*By the Court*—The decision of the court of appeals is affirmed.