STATE of Wisconsin, Plaintiff-Respondent,

v.

Claude L. MINK, Sr., Defendant-Appellant.†

Court of Appeals

*No. 87–1796–CR. Submitted on briefs June 8, 1988.—Decided July 27, 1988.*

(Also reported in 429 N.W.2d 99.)

† Petition to review denied.

1

4

5

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John Anthony Ward,* of Kenosha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general and *Maureen McGlynn,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J. Claude L. Mink, Sr., appeals from a judgment convicting him of first-degree sexual assault, contrary to sec. 940.225(1)(d), Stats., for sexual contact with a person twelve years of age or younger. He raises two issues.

First, he argues that his right to be free from double jeopardy was violated because: (1) the trial court erred in determining that the jury in his first trial was deadlocked; and (2) the trial court failed to properly evaluate the alternatives to a mistrial. We conclude that Mink has not preserved his right to have these issues reviewed.

Second, Mink argues that evidence of other acts allegedly committed by him should not have been admitted under sec. 904.04(2), Stats, and that this evidence was unduly prejudicial under sec. 904.03, Stats. We conclude that the admission of other acts evidence in this case was within the trial court's discretion. Accordingly, we affirm.

Mink was charged with having sexual contact with his four-year-old grandson, J.S., on May 16, 1986. The first trial resulted in a mistrial when the jury remained deadlocked after approximately thirteen hours of deliberation.

At the second trial, evidence was introduced regarding Mink's alleged sexual contact with his stepsons. These acts were alleged to have occurred in late 1965 and for several years thereafter. The trial court allowed this testimony, over Mink's objection, for the purpose of proving motive under sec. 904.04(2), Stats. Limiting instructions were frequently read to the jury concerning this evidence.

The jury in Mink's second trial found him guilty. The trial court entered a judgment of conviction from which Mink now appeals. Additional facts will be stated as necessary.

## DOUBLE JEOPARDY

The state argues that Mink waived his double jeopardy claim by failing to raise it prior to the second trial. Mink counters by asserting that the "detailed objection" made immediately prior to the granting of a mistrial suffices to preserve a double jeopardy

claim.[1] We begin with a discussion of the relationship between mistrials and double jeopardy claims.

The decision whether to grant a mistrial lies within the sound discretion of the trial court. *State v. Mendoza,* 101 Wis. 2d 654, 659, 305 N.W.2d 166, 168–69 (Ct. App. 1981). The classic justification for a mistrial is that the jury is unable to agree. *State v. Kendall,* 94 Wis. 2d 63, 71, 287 N.W.2d 758, 762 (1980).

Generally, when a defendant requests a mistrial, double jeopardy rights are deemed waived. *State v. Jenich,* 94 Wis. 2d 74, 92, 288 N.W.2d 114, 122 (1980). When the defendant does not consent to the mistrial, the constitutionality of a retrial depends on whether there was a manifest necessity for the mistrial. *State v. DuFrame,* 107 Wis. 2d 300, 303–04, 320 N.W.2d 210, 211 (Ct. App. 1982).

Double jeopardy not only protects accused persons from being twice subjected to punishments, but protects them from being twice put to trial with its accompanying embarrassment, expense and ordeal.[2]

---

[1]The "detailed objection" by Mink's counsel is as follows:

I would object to it, your Honor. I think that the jury at this point, some people may be stubborn just because they are just plain tired; that possibly after a good night's sleep and resuming the deliberations, maybe for a short period tomorrow morning, they may be able to reach a deliberation. Therefore, I would request that the Court house them for tonight and permit them to have a few hours tomorrow. And if they still can't, then tomorrow morning then to declare a mistrial.

[2]Indicative of the importance of the defendant's right to avoid a second trial is our supreme court's view regarding permissive appeals. The supreme court has stressed that the court of appeals

*Jenich,* 94 Wis. 2d at 80, 288 N.W.2d at 117. Federal and state courts have held that in order to guarantee protection against two trials, double jeopardy claims must be presented first to the trial court, preferably prior to the second trial. *See, e.g., Paul v. Henderson,* 698 F.2d 589, 591–92 (2d Cir.), *cert. denied,* 464 U.S. 835 (1983); *Commonwealth v. White,* 382 A.2d 1205, 1207–08 (Pa. 1978). Our supreme court has also declined to address claims not raised in the trial court which do not impugn the integrity of the determination of guilt but assert instead that the trial of the defendant should not have commenced. *Maclin v. State,* 92 Wis. 2d 323, 330, 284 N.W.2d 661, 665 (1979). Two reasons offered by the supreme court for declining to address such a claim are: (1) the availability of a remedy in the trial court by amendment or dismissal of the charges; and (2) a record which fails to provide the appellate court with the informed consideration of the trial judge. *Id.* at 331, 284 N.W.2d at 665.

Here, we do not have the advantage of the trial court's ruling on double jeopardy. We realize that the trial court is not required to utter the words "manifest necessity" when declaring a mistrial. *See Arizona v. Washington,* 434 U.S. 497, 516–17 (1978). However, in order for a trial judge to properly rule on a double jeopardy claim where the defendant did not consent to the mistrial, a finding regarding manifest necessity

should strongly consider granting leave to appeal nonfinal orders which deny a motion to dismiss for double jeopardy. *State v. Jenich,* 94 Wis. 2d 74, 97a–97b, 292 N.W.2d 348, 349 (1980) (per curiam on motion for reconsideration). The court stated that immediate review of such an order would often be necessary to protect the accused from substantial or irreparable injury. *Id.* at 97b, 292 N.W.2d at 349.

must be made. *See DuFrame,* 107 Wis. 2d at 303–04, 320 N.W.2d at 211. Unless a double jeopardy claim is specifically raised in the trial court, the record is incomplete for review on that basis.

An objection to a mistrial and a motion to dismiss the charges seek different remedies. By objecting to a mistrial, a defendant is expressing his or her interest in obtaining a verdict from the first tribunal to hear the case. *See State v. Copening,* 100 Wis. 2d 700, 710–11, 303 N.W.2d 821, 827 (1981). If the trial court grants a mistrial over that objection, the defendant has then preserved the right to raise double jeopardy, *cf. Jenich,* 94 Wis. 2d at 92, 288 N.W.2d at 122, *if the need later arises.*

Following a mistrial, the burden of going forward is on the state. The state may decide not to pursue the case further, to enter into plea negotiations or to try the defendant again. Only when the latter option is chosen does the issue of double jeopardy arise. At that point, the defendant must move for dismissal on double jeopardy grounds to avoid waiver.

Here, Mink did not take the crucial step of seeking dismissal of the charges. Therefore, his claim of double jeopardy based on the mistrial is waived.

Even if we were to hold that Mink did not waive his double jeopardy claim, we would affirm. The question is whether, under all the facts and circumstances, giving deference to the trial court's first-hand observation, it was reasonable to grant a mistrial under the "manifest necessity" rule. *Copening,* 100 Wis. 2d at 710, 303 N.W.2d at 826–27. Ordinarily, whether manifest necessity existed is a mixed ques-

tion of fact and law. *United States ex rel. Russo v. Superior Court,* 483 F.2d 7, 15 (3d Cir.), *cert. denied,* 414 U.S. 1023 (1973). Here, the facts are not disputed and only a question of law remains. *See Quinn v. Town of Dodgeville,* 122 Wis. 2d 570, 577, 364 N.W.2d 149, 154 (1985).

The first jury to hear Mink's case had deliberated nearly nonstop from 10:20 a.m. until 11:40 p.m. Around 6:00 p.m., when the jurors were offered a meal, they asked the bailiff "how long [the trial court] was going to keep them before telling them what to do." The court had the jurors brought in and after asking about their progress sent them back to deliberate further. Some time later, the jury sent out a question asking what constituted a hung jury.

Around 9:00 p.m., the trial court read Wis J I—Criminal 520 to them.[3] At 10:14 p.m., the trial court asked the jurors whether they were likely to agree within the next hour or two. Again at 11:41 p.m., the

---

[3]This jury instruction, Wis J I—Criminal 520, is given to juries which have deliberated for some time without reaching an agreement. *See Quarles v. State,* 70 Wis. 2d 87, 89–91, 233 N.W.2d 401, 402–03 (1975). It reads as follows:

> You jurors are as competent to decide the disputed issues of fact in this case as the next jury that may be called to determine such issues.
>
> You are not going to be made to agree, nor are you going to be kept out until you do agree. It is your duty to make an honest and sincere attempt to arrive at a verdict. Jurors should not be obstinate; they should be open-minded; they should listen to the arguments of others, and talk matters over freely and fairly, and make an honest effort to come to a conclusion on all of the issues presented to them.
>
> You will please retire again to the jury room.

Wis J I—Criminal 520.

jurors were asked whether there was a possibility that they would reach an agreement if they were given extra time, either that night or the next morning. The answer to all of these questions was unanimously "no." Under these facts and circumstances, the declaration of the mistrial was within the trial court's discretion and was manifestly necessary. *Cf. Du-Frame*, 107 Wis. 2d at 305–06, 320 N.W.2d at 212–13.[4]

## PRIOR ACTS EVIDENCE

Mink's remaining argument concerns other acts evidence which was admitted by the trial court as evidence of motive under sec. 904.04(2), Stats.[5] The general rule is that evidence of other acts is not admissible, *Whitty v. State*, 34 Wis. 2d 278, 292–93, 149 N.W.2d 557, 563 (1967), *cert. denied*, 390 U.S. 959 (1968). However, sec. 904.04(2) does allow admission of other acts evidence if used for specific purposes, such as proof of motive or identity. *State v. Danforth*, 129 Wis. 2d 187, 202, 385 N.W.2d 125, 131 (1986).

---

[4]Mink also complains that the trial court failed to properly evaluate the alternative of sending the jury to a hotel and continuing deliberations the next day. *See State v. Copening*, 100 Wis. 2d 700, 711, 303 N.W.2d 821, 827 (1981). Faced with the jury's unanimous agreement that it could not agree even after a good night's sleep, the trial court properly rejected that alternative.

[5]Section 904.04(2), Stats., reads as follows:

OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Other acts evidence must pass a two-step test prior to being admissible. *Id.* First, the evidence must be relevant to one of the statutory exceptions. *Id.* Second, the trial court must determine whether any prejudice resulting from the admission of such evidence substantially outweighs its probative value. *Id.* This second step involves the balancing test of sec. 904.03, Stats.[6]

Mink takes exception to the trial court's determinations on each of these two steps. Our review of these evidentiary issues is governed by the abuse of discretion standard. *State v. Fishnick,* 127 Wis. 2d 247, 257, 378 N.W.2d 272, 278 (1985). The trial court's determination will be upheld if discretion was exercised according to accepted legal standards and in accordance with the facts of record. *Id.* There must be a reasonable basis for the trial court's determination, and the trial judge must undertake a reasonable inquiry and examination of the underlying facts. *Id.*

We are also mindful of the supreme court's reaffirmation of its commitment to the principle that a greater latitude of proof is to be allowed in the admission of other acts evidence in sex crime cases, particularly those involving a minor child. *State v. Friedrich,* 135 Wis. 2d 1, 19–20, 398 N.W.2d 763, 771

---

[6]Section 904.03, Stats., reads as follows:

**Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

(1987). This "greater latitude" is not so much a matter of relaxing the general rule that other acts evidence is not competent as it is a matter of placing the other acts evidence within one of the well-established exceptions of sec. 904.04(2), Stats. *Fishnick,* 127 Wis. 2d at 256, 378 N.W.2d at 277.

One reason for allowing greater latitude is to corroborate the victim's testimony against a credibility challenge by the defense. *Id.* at 257 n. 4, 378 N.W.2d at 278. Such a challenge may involve the possibility of fantasy, unreliability or vindictiveness on the part of the child-victim. *Id.* Mink's defense in this case involved not only the reliability of J.S., but the vindictiveness of J.S.'s mother.

As the first step of the test, the trial court determined that the prior acts evidence was relevant for the purpose of proving motive. The court noted that under sec. 940.225(1)(d), Stats., the state had the burden of proving that Mink had sexual contact for the purpose of sexual arousal or gratification. *See* sec. 940.225(5)(b).[7]

The trial court then noted that the other acts evidence would be probative of Mink's desire to obtain such sexual gratification from young boys. The court specifically stated that the other acts evidence would not be admitted to show that because Mink had "broken the law" before, he is likely to have done it now.

The trial court's reasoning for allowing the admission of the other acts evidence is akin to the supreme court's formulation.

---

[7]During the pendency of this appeal, the statutory definition of "sexual contact" was renumbered from subsec. (5)(a) of sec. 940.225, Stats., to subsec. (5)(b). *See* 1987 Wis. Act 352.

> [W]hile we do not permit a jury to infer that because a defendant committed prior act X, he is therefore of such a character and disposition to commit present act Y, the law does allow, under the proper circumstances, a jury to infer from act X a defendant's motive, intent, etc. with respect to act Y.

*Fishnick,* 127 Wis. 2d at 254, 378 N.W.2d at 276. Because Mink's purpose for the sexual contact is an element of the crime, and because his motive impacts upon that purpose, the other acts evidence tends to show Mink's purpose or motive for the sexual contact with J.S. *See id.* at 260–61, 378 N.W.2d at 279. As in *Fishnick,* the jury was properly instructed on the limited use of this evidence. *See id.* at 261, 378 N.W.2d at 279.

Mink relies on *State v. Sonnenberg,* 117 Wis. 2d 159, 344 N.W.2d 95 (1984), as support for his argument that the other acts evidence was irrelevant to show motive. *Sonnenberg* stated that the relevancy depends upon the other acts' nearness in time, place and circumstances to the alleged crime and upon the elements which are in dispute and are sought to be proven. *Id.* at 172, 344 N.W.2d at 101.[8]

We first dismiss Mink's argument that the place and circumstances of the other acts are different from those of the current crime. Without going into intimate details, we note that the other acts evidence consisted of Mink's contacts with his stepsons while they were as young as ten and twelve years old. Mink

[8]The supreme court clarified in *State v. Fishnick,* 127 Wis. 2d 247, 378 N.W.2d 272 (1985), that motive can be an element in dispute even when the defense position is that the crime did not occur. *Id.* at 258–59, 378 N.W.2d at 278–79.

seeks to make much of the age difference between the stepsons at the time of his alleged contact with them and the age of J.S. (four) at the time of the current crime. However, one stepson testified that he was pre-pubescent at the time Mink took liberties with him, thus narrowing the dissimilarity. *Cf. Fishnick,* 127 Wis. 2d at 250–51, 264, 378 N.W.2d at 274–75, 281 (ten-year difference in age did not bar admission of other acts evidence). All the contacts (both the other acts and the current crime) took place in Mink's home, involved members of Mink's immediate family and included similar sexual activities. The trial court found no fatal dissimilarity in the place and circum-stances surrounding the contacts; nor do we.

The more difficult question is the remoteness of time. The other acts evidence concerning Mink's stepsons stemmed from incidents occurring over a range of thirteen to twenty-two years prior to the commission of the current crime. The state admits that this is undeniably remote. As noted by Mink, remoteness in time does not necessarily render the evidence irrelevant, but it may do so when the elapsed time is so great as to negate all rational or logical connections between the fact to be proven and the other acts evidence. *Sanford v. State,* 76 Wis. 2d 72, 81, 250 N.W.2d 348, 352 (1977).

The trial court dealt with the remoteness in time by balancing it against the similarity in events. This is consistent with the statement in *Sanford* that re-moteness in time does not render the evidence *per se* inadmissible. *Id.* The trial court examined the similar-ity in facts and reached a reasoned decision which is founded upon accepted legal standards. No abuse of discretion occurred with respect to the first step of the

"other acts" test. *See Fishnick,* 127 Wis. 2d at 257, 378 N.W.2d at 278.

The second step of the test is determining whether the other acts evidence is so prejudicial as to outweigh its probative value. *Id.* at 254, 378 N.W.2d at 276. The prejudice which must be avoided is the potential harm of a jury reaching the conclusion that because the defendant committed a bad act in the past, the defendant necessarily committed the current crime. *Id.* at 261–62, 378 N.W.2d at 280.

In the case before us, the trial court gave limiting instructions throughout the trial in proximity to any testimony regarding other acts evidence. Similar instructions were given at the close of the evidence. The instructions given were clear and complete, being substantially similar to those approved in *Fishnick.* *Id.* at 262, 378 N.W.2d at 280.

As in *Fishnick,* we conclude that these instructions "went far to cure any adverse effect attendant with the admission of the [other acts] evidence." *Id.* The trial court also exercised its discretion in excluding certain pieces of testimony as unduly prejudicial. This testimony concerned an injury to one of the stepsons which was allegedly caused by Mink. As regards the evidence which was admitted, the trial court did not abuse its discretion in concluding that the probative value of the evidence was not outweighed by any prejudicial effect. *Cf. id.* Therefore, we affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.

17