STATE of Wisconsin, Plaintiff-Respondent,

v.

Eugene P. OPALEWSKI, Defendant-Appellant.†

Court of Appeals

*No. 01–1864–CR. Submitted on briefs February 5, 2002.— Decided May 7, 2002.*

2002 WI App 145

(Also reported in 647 N.W.2d 331.)

† Petition to review denied 7-26-02.

110

On behalf of the defendant-appellant, the cause was submitted on the brief of *Lorinne J. Cunningham* of *Schmidt, Martz & Smith, Ltd.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general and *David J. Becker*, assistant attorney general.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. WEDEMEYER, P.J. Eugene P. Opalewski appeals from a judgment of conviction for first-degree sexual assault of a child and incest with a child, contrary to Wis. Stat. §§ 948.02(1) and 948.06(1) (1999–2000).[1] Opalewski asserts three claims of error: (1) the trial court erroneously exercised its discretion by admitting evidence of prior acts of sexual assault; (2) improper questioning and final argument by the State exacerbated the error of admitting other acts evidence; and (3) the trial court inadequately instructed the jury on how to properly assess the other acts evidence. Because the trial court did not erroneously exercise its discretion in admitting the other acts evidence or in instructing the jury in regard to the other acts evidence, we affirm.

## I. BACKGROUND

¶ 2. Opalewski was arrested and charged with first-degree sexual assault and incest with a child based on reports that between April and late August 1999, he had sexual contact with his five-year-old daughter while

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

the two showered together. The sexual contact consisted of her touching Opalewski's penis as she washed parts of his body. The incident came to light as the result of telephone calls made to several social service agencies by Opalewski's forty-three-year-old daughter, Kim B. She relayed information that Opalewski was a convicted child molester and that he was taking showers with his minor daughter.

¶ 3. The State filed a pretrial motion seeking to introduce, among other matters, evidence of Opalewski's past sexual abuse of his two adult daughters and the children of a former live-in girlfriend. The State argued for the admission of the other acts evidence on three grounds: (1) proof of intent; (2) proof of motive; and (3) absence of mistake. Opalewski countered that the evidence was too remote in time and circumstance to be admissible as other acts evidence. In addition, Opalewski argued that if such evidence were admitted, it would relate only to the issue of intent; but, because the evidence was so dissimilar to the charged offenses, it could not be helpful to the jury on the element of intent. Instead, it was likely to inflame the jury.

¶ 4. After hearing arguments on the motion, the trial court ruled that the proposed evidence was admissible on the issues of intent, motive, and absence of mistake. It further indicated it would give a cautionary instruction on the proper consideration of such evidence. The jury convicted Opalewski of both charges. He now appeals.

## II. ANALYSIS

¶ 5. Opalewski contends that the trial court erroneously exercised its discretion in admitting the other acts evidence for four reasons: (1) it failed to explicate

in any detail the basis for admitting the evidence; (2) the admitted evidence was too remote in time and circumstance from the violations with which he was charged; (3) the probative value of admitting such evidence was substantially outweighed by the danger of unfair prejudice; and (4) the unfair prejudice visited upon him could not be cured by jury instructions. We shall address each issue in turn.

¶ 6. Opalewski first contends that because the trial court did not adequately set forth its reasoning, its decision constituted reversible error. While we agree that the trial court failed to adequately explain the basis for its ruling, we are not persuaded that reversal is required.

¶ 7. In evidentiary matters, a trial court's failure to set forth the basis for its ruling whether to admit or refuse to admit evidence constitutes an erroneous exercise of discretion. *State v. Sullivan*, 216 Wis. 2d 768, 781, 576 N.W.2d 30 (1998). When such failure occurs, however, we are required to independently review the evidence to determine whether it supports the trial court's decision. *State v. Alsteen*, 108 Wis. 2d 723, 728, 324 N.W.2d 426 (1982). We shall now engage in that exercise.

¶ 8. In commencing our review of the record, we are guided by the dictates of *Sullivan*, 216 Wis. 2d at 772–73, which set forth a three-step analytical process to be applied in determining the admissibility of other acts evidence. This methodology seeks answers to the following three questions:

(1) Is the other acts evidence offered for an acceptable purpose under Wis. Stat. § 904.04(2), such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident?

(2) Is the other acts evidence relevant, considering the two facets of relevance set forth in Wis. Stat. § 904.01? The first consideration in assessing relevance is whether the other acts evidence relates to a fact or proposition that is of consequence to the determination of the action. *See* § 904.01. The second consideration in assessing relevance is whether the evidence has probative value; that is, whether the other acts evidence has a tendency to make the consequential fact or proposition more probable or less probable than it would be without the evidence. *Id.*

(3) Is the probative value of the other acts evidence substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative. evidence? Wis. Stat. § 904.03.

¶ 9. In *State v. Davidson*, 2000 WI 91, ¶ 36, 236 Wis. 2d 537, 613 N.W.2d 606, our supreme court further explained that when, as here, the case involves the sexual assault of a child, "the greater latitude rule" for the admission of other acts evidence is to be applied at each stage of the *Sullivan* analysis.

¶ 10. Opalewski's claim of trial court error for admitting other acts evidence relates to four victims of his prior sexual advances: his two adult daughters (when they were adolescents), and the two children of his former live-in girlfriend. In the former, he was not prosecuted but, in the latter, he was prosecuted, was convicted, and served a prison term.

¶ 11. Opalewski's forty-three-year-old daughter, Kim B., testified that when she was between ten and fourteen years old, Opalewski assaulted her by repeatedly crawling into her bed while naked, and forcing her to masturbate him. The other adult daughter, forty-four-year-old Karen T., testified that, starting when she was ten years old, Opalewski forced her to perform oral sex at least once a week, for about four years.

¶ 12. Donna S., the former live-in girlfriend, testified about what happened to her two children, Amanda and James. She told the jury that in the early 1980's, Amanda, then age nine, and James, then age six, were sexually assaulted by Opalewski multiple times. She actually caught Opalewski in the act of assaulting James.

¶ 13. Testifying at trial in the instant case, Opalewski denied sexually assaulting Kim, but admitted assaulting Karen and expressed shame for his actions. He also admitted his sexual conduct with Amanda and James. He stated he pled guilty as a result, served a five-year prison term, and a subsequent period of parole.

¶ 14. Opalewski testified that he had showered with his minor daughter before this incident. He said that during these showers, he would wash her body. What distinguished this incident, however, was that it was the first time she washed his body. Opalewski stated she asked him if she could wash him. Her video testimony was to the contrary; she stated Opalewski requested that she wash his body. Opalewski stated that when she started to wash his penis with a bar of soap, he asked her to stop, and she did.

## A. Similarity.

¶ 15. In presenting his challenge to the admission of the other acts evidence, Opalewski first contends that the other acts evidence was too dissimilar in circumstances to the crimes with which he is charged to be relevant. *See Sullivan*, 216 Wis. 2d at 786–87. More specifically, he argued that his five-year-old daughter was much younger than the victims in any of the prior incidents. The shower-washing incident with her was ambiguous in nature; whereas, the prior acts evidence constituted clear, egregious sexual assaults. Further, the prior acts were repetitive, and the incident with her was isolated. Opalewski's distinctions are unavailing.

¶ 16. "The required degree of similarity between the other act and the charged offense and the required number of similar other acts cannot be formulated as a general rule." *Id.* at 787. We reject Opalewski's contention that the acts are dissimilar.

¶ 17. At the time that the sex acts were initiated, the victims' ages ranged from five years for his daughter, to six through ten years for the other four victims. This is not so dissimilar as to render the evidence inadmissible. Moreover, it was sheer fortuity that the prior acts were repetitive, rather than singular, as in the instance of his five-year-old daughter. That is, the other acts were repetitive because Opalewski's conduct was not discovered after the first incident. In attempting to differentiate the nature of the current charges with the other acts evidence, Opalewski ignores the one common element contained in all of the incidents; that is, the pattern for their occurrence. In each instance, a child within a familial or quasi-familial setting was

sexually assaulted. *Cf. State v. Tabor*, 191 Wis. 2d 482, 494–95, 529 N.W.2d 915 (Ct. App. 1995). In each instance, Opalewski's relationship with the child provided him with a protective shield from discovery of his unlawful acts.

¶ 18. An element of the offenses with which Opalewski was charged is "sexual conduct." "Sexual conduct" means:

> [i]ntentional touching by the complainant or defendant, either directly or through clothing by the use of any body part or object, of the complainant's or defendant's intimate parts if that intentional touching is either for the purpose of sexually degrading or sexually humiliating the complainant or *sexually arousing or gratifying* the defendant.

WIS. STAT. § 948.01(5) (emphasis added). The other acts evidence demonstrated that the touching was intentional, the motive was sexual gratification and the act of having his minor daughter wash his penis was not a mistake, all factors of consequence in this case. Thus, these other acts are relevant in proving intent, motive, and absence of mistake.

*B. Remoteness in Time.*

¶ 19. Opalewski next claims that the other acts evidence was too remote in time to the alleged crime, and thus was irrelevant. He asserts that the alleged sexual assault on his daughter Kim, and the admitted sexual assaults upon Karen, occurred in the late 1960's and early 1970's, more than a quarter of a century ago, and the incidents involving Amanada and James oc-

curred in 1983–84, more than fifteen years before the conduct in the instant case. Again, we are not persuaded.

¶ 20. Wisconsin appellate courts have yet to address the extent of remoteness presented in this case. Suffice it to say that remoteness in time does not necessarily render the proffered evidence irrelevant. It may do so, however, when the elapsed time is so great as to negate all rational or logical connections between the fact to be proven and the other acts evidence. *State v. Mink*, 146 Wis. 2d 1, 16, 429 N.W.2d 99 (Ct. App. 1988) (concluding that a span of twenty-two years did not render the other acts evidence irrelevant). "[T]he element of the remoteness in time 'must be balanced against the uniqueness of the prior act of which evidence is offered.' " *Sanford v. State*, 76 Wis. 2d 72, 81–82, 250 N.W.2d 348 (1977) (citation omitted). Stated otherwise, "[i]n considering time, we must take into account . . . not only the time that has passed, but also the opportunities presented over that period for the defendant to repeat the acts." *State v. Kuntz*, 160 Wis. 2d 722, 747, 467 N.W.2d 531 (1991).

¶ 21. As noted earlier in this opinion, there is a similarity between the other acts evidence and the charges lodged against Opalewski in this case. All of the acts, both past and present, involved Opalewski taking advantage of minor children, with whom he shared a familial or quasi-familial relationship, for his own sexual gratification. This is a critical similarity. That he would have more than one opportunity to sexually molest minors in his family is unusual, but here, Opalewski engaged in such activities three times. We conclude that the record was sufficient for the trial court, in its discretion, to conclude that the other acts

were not so remote to attenuate a rational or logical connection between the acts.

¶ 22. As pointed out by the State in its brief, the time factors in this case actually enhance, rather than detract from, the other acts' relevance and probative value. The other acts suggest a pattern of consistent activity that in its totality is significantly more probative than would be the constituent parts standing alone. Opalewski apparently took advantage of minor children, with whom he shared a familial relationship, every time he had the opportunity. The sexual activity which Opalewski directed toward his own daughters and the minor children of his live-in girlfriend, all in at least a quasi-familial setting, made the consequential facts, i.e. intent, motive, and absence of mistake, more probable than they would have been without that evidence. Therefore, they are relevant to a determination of intent, motive, or absence of mistake. This is particularly true given the testimony of his former girlfriend that he said "when it came to sex, man, woman or child, eight months to eighty years, nothing was off limits."

*C. Prejudice.*

██

¶ 23. Opalewski next claims that the probative value of the other acts evidence was substantially outweighed by the danger of unfair prejudice. Unfair prejudice arises either when the evidence admitted has a tendency to influence the outcome of the jury deliberations by the use of improper means, or when it arouses in the jury a sense of horror or desire to punish. *Sullivan*, 216 Wis. 2d at 789–90.

¶ 24. Opalewski argues that the State presented to the jury an impermissible inferential chain, i.e. the

prior acts allowed the jury to infer that he was a dangerous child molester which, in turn, allowed the jury to conclude that he was acting in conformity with his character during the shower incident.

¶ 25. The first basis for this assertion of error was the testimony of Opalewski's adult daughter, Kim. Significantly, the portion of Kim's testimony upon which Opalewski relies was not elicited by the State, but was provoked by the cross-examination of Opalewski's own counsel.[2] Further, Kim's responses were not objected to as being non-responsive. If any prejudice resulted from this interrogatory foray, it was

---

[2] During the cross-examination of Kim, the following exchange occurred:

| [Kim]: | . . . I had wanted to have a conversation with about it — with him about it, ask him to never do this again to another child. |
| [Defense]: | Were you aware at that time of these allegations, the things you heard or concerns that — that this Filipino community had raised with you? |
| [Kim]: | No, I don't think at that time I did. |
| [Defense]: | Did you — |
| [Kim]: | I just, I'm aware of what — child molesters have a pattern, the recidivism rate. Their proclivity for doing so over and over again. |
| [Defense]: | This is what you've learned during your therapy? |
| [Kim]: | No, over the years reading books. |
| . . . . | |
| [Defense]: | And was that meeting productive? |
| [Kim]: | I hoped it would be. |
| [Defense]: | Was it. |
| [Kim]: | Obviously it wasn't or we wouldn't be here. |

a self-inflicted wound and, therefore, not this court's responsibility to mend. *See Ohler v. United States*, 529 U.S. 753, 755 (2000) (holding that "a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted").

¶ 26. Second, Opalewski argues that the challenged evidence was unfairly prejudicial because it was more likely to produce hostility and revulsion than to help the jury determine his intent, motive, or absence of mistake. In particular, he complains that his former live-in girlfriend should not have been permitted to testify about the sexual assaults of her two children, Amanda and James. He contends the trial court should have excluded her statement describing Amanda's request: "[P]lease, don't let him tuck me in at night anymore. Please mom." Moreover, he argues the trial court should have excluded her testimony that she accidentally witnessed Opalewski molesting James. To properly assess the merits of this claim, we have set forth below pertinent parts of the testimony of Donna S., the former live-in girlfriend.[3]

---

[3] Ms. S. provided the following testimony:

Q . . . How is it that you know Mr. Opalewski?

A We used to be involved.

Q And how — for how long of a period were you involved?

A About five years.

Q And during those five years, did you live in the same residence?

A Yes, we did.

¶ 27. From a review of this testimony, we conclude there is nothing contained in this challenged

Q And can you give us an idea of time frame, when was that that you were living with Mr. Opalewski?

A From 1980 until 1985.

Q Do you have any children, Ms. S.[]?

A I have three.

Q And can you tell us in 1980 to 1985, what were their ages? What are their names and what were their ages at that time.

A My daughter, Amanda, she was born in 1971, so she would have been 9, 10.

Q Okay. And do you have other children other than Amanda?

A My son James was about six.

Q What year was he born in?

A '80 — not '80, '74.

Q And you have another child?

A I have a younger daughter, she was born in '78.

Q What's her name?

A Joy.

Q Joy? During the time that you were living with Mr. Opalewski, did it come to your attention that he had done something with respect to either of your children?

A Yes, he had.

Q And how did that come to your attention?

A My children told me.

portion of the other acts evidence that could provoke "hostility or revulsion." The sexual contact with thedaughter Amanda was described, without detail, as

Q And which children?

A My daughter Amanda and my son James.

Q And what — were the things that they told you sexual in nature?

A Yes.

 . . . .

Q Did he deny it?

A Oh, definitely.

Q And what happened then?

A It became a little harder for him to deny when I walked into a room and caught him doing this to my son.

Q To James?

A Yes.

 . . . .

Q Did you — did Mr. Opalewski ever admit to you that he had sexually abused you daughter, Amanda?

A Yes.

 . . . .

Q . . . And was it your understanding that this happened with respect to Amanda one time or more than one time?

A Many, many, many times. She came to me one night and asked, please, don't let him tuck me in at night anymore. Please, mom.

127

"fondling" which "required her to do other things." As for James, no description was given of Opalewski's

Q And is it your understanding that it involved fondling?

A Yes.

Q And did it require her to do things to him?

A Yes, it did.

Q And with respect to James, did Mr. Opalewski ever admit to you sexually assaulting your son, James?

A He couldn't avoid admitting it, I walked in on him.

Q And did he ever admit to you that it happened on more than one occasion?

A Eventually.

. . . .

Q . . . He said in other countries this isn't wrong, what was he referring to when he said in other countries this isn't wrong.

A In other countries it's not illegal to have sex with children.

Q Do you recall any other statements that he made?

. . . .

Q . . . Ms. S.[], any other statements by Mr. Opalewski that stand out in your mind.

. . . .

A He said when it came to sex, man, woman or child, 8 months to 80 years, nothing was off limits.

sexual contact with him.[4] The manner in which Donna S. presented the other acts evidence relating to Amanda and James did not provoke hostility and revulsion; no unfair prejudice outweighed the probative value of the other acts evidence.

*D. Prosecutor's Remarks.*

¶ 28. Opalewski also claims that the prosecutor's remarks during the trial increased the prejudicial effect of the other acts evidence. The remarks of the prosecutor about which he complains are: (1) the questions put to Opalewski's adult daughters about the fact that he had not been prosecuted for his sexual contact with them; and (2) the closing argument suggesting that the jury should convict him to prevent him from committing further assaults upon his minor daughter. Because he waived his right to raise this issue on appeal, we reject his argument.

¶ 29. Opalewski failed to object to the testimony of his adult daughters that he was never prosecuted for the assaults on them. Moreover, no objection was lodged regarding the contents of the prosecutor's closing argument. Therefore, Opalewski is in no position to now complain that such questions or comments were considered by the triers of fact. He waived his right to raise this issue on appeal. *See State v. Mayer*, 220 Wis. 2d 419, 430, 583 N.W.2d 430 (Ct. App. 1998) ("We will not

---

[4] In a pretrial motion, Opalewski's counsel argued that the evidence relating to the sexual assaults of Amanda and James should be presented by admitting the Judgment of Conviction and stipulating to the facts admitted by Opalewski at the plea hearing. He contends that this procedure would have dissipated "much of the prejudicial effect of this other acts evidence." The matter, however, was never really addressed by the trial court.

review a decision to admit evidence when the evidence was admitted without an objection to the trial court."); *State v. Guzman*, 2001 WI App 54, ¶ 25, 241 Wis. 2d 310, 624 N.W.2d 717 ("In order to preserve this objection [to the prosecutor's closing argument], [the defendant] was obligated to make a contemporaneous objection and move for a mistrial."). Thus, this claim of error fails.

*E. Jury Instructions.*

¶ 30. Lastly, Opalewski contends that the trial court erroneously exercised its discretion because the jury instructions it gave relating to other acts evidence were inadequate to prevent any unfair prejudice from occurring. He claims that no limits were placed on the admissibility of the other acts evidence. He further claims that confusion occurred because the jury was told both that the evidence that he had been convicted of other crimes could be used "solely" for determining the credibility of his testimony and also for evidence on the issue of intent, motive, and absence of mistake. We reject this claim of error.

¶ 31. First, the cautionary instruction given by the trial court was specifically limited to the purpose for which the evidence was properly received. "Normally, a cautioning instruction is sufficient to cure any adverse effect attendant with the admission of other acts evidence." *State v. DeKeyser*, 221 Wis. 2d 435, 452, 585 N.W.2d 668 (Ct. App. 1998). "Jurors are presumed to follow the court's instructions." *State v. Adams*, 221 Wis. 2d 1, 12, 584 N.W.2d 695 (Ct. App. 1998). Here, the cautionary instruction specifically informed the jurors

that they were not to use the evidence that Opalewski may have committed sexual assaults in the past "to conclude that [he] has a certain character or a certain character trait and that [he] acted in conformity with that trait or character with respect to the offense charged in this case." Rather, the jury was told if it found that such conduct occurred, it could be considered "only on the issue of motive, intent, absence of mistake, or accident." Moreover, the prosecutor advised the jury of this requirement of specificity by emphasizing, during closing argument, that the other acts evidence had been introduced "because it goes to the Defendant's state of mind [h]is motive, his intent, his purpose, and the absence of mistake or accident." There was not the slightest suggestion that the evidence was to be used as an indication of character.

¶ 32. Second, the record belies the assertion that the given instructions created confusion as to how evidence of past criminal convictions was to be used versus other acts evidence. Contrary to Opalewski's argument in his brief, the two instructions were not given at the same time or even serially. Five paragraphs separated the two instructions. Furthermore, we find no basis in the record to conclude that a reasonable jury could not discern the distinction between the two instructions and how they were to be applied. Consequently, the normal rule as set forth in *DeKeyser* applies.

*By the Court.*—Judgment affirmed.