**COURT OF APPEALS
DECISION
DATED AND FILED**

**March 22, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1909-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF361

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JEFFREY L. OLDS,

   DEFENDANT-APPELLANT.

            APPEAL from a judgment and an order of the circuit court for Walworth County:  KRISTINE E. DRETTWAN, Judge.  *Affirmed*.

            Before Neubauer, Grogan and Lazar, JJ.

            **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jeffrey L. Olds appeals a judgment of conviction for four counts of sexual assault of a child (two in the first degree and two in the second degree, with the two sets pertaining to different victims), all as a persistent repeater, and an order denying his postconviction motion seeking a new trial. Olds argues his trial attorney was constitutionally ineffective for failing to object to the admission of other-acts evidence comprising three instances of prior sexual or suggestive conduct with minors. We conclude he has failed to demonstrate prejudice from any alleged deficiency in this regard. Accordingly, we affirm.

## BACKGROUND

¶2 On June 25, 2017, Olds's adult cousin Amber[1] notified police that her ten-year-old daughter, Jennifer, had disclosed that Olds had touched her inappropriately the night before. Amber had permitted Olds to stay overnight at her residence following a cookout, at which time he claimed he was too intoxicated to drive. At trial, Jennifer testified that Olds had entered her bedroom during the night and touched her breasts and vaginal area underneath her nightgown. Jennifer testified that Olds talked about kissing her and kissed her during the assault.

¶3 Jennifer's disclosure prompted Tessa, Olds's adult niece, to question her fourteen-year-old daughter Sadie about why Sadie had been so reluctant to be near Olds over the past year. Sadie, who has autism and learning disabilities,

---

[1] Consistent with the policy underlying WIS. STAT. RULE 809.86 (2021-22), we refer to the victims and their family members using the pseudonyms contained in the State's brief.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

whispered to Tessa that it involved "s-e-x." At trial, Sadie testified Olds had touched her vaginal area while she was at his house. Sadie could not remember at trial whether Olds had also put his mouth on her vaginal area, but upon being presented with a forensic interview in which she had made that allegation, she testified that her statements to the interviewer were the truth.

¶4 The State also sought and was granted the admission at trial of three instances of prior sexual misconduct by Olds involving young, female victims. The offenses occurred decades earlier, and though Olds's trial counsel objected to their admission, she presented no legal argument in opposition.

¶5 Leslie testified that when she was thirteen years old, she would babysit for Olds's children. One evening in 1990, Olds offered to drive Leslie home, and she accepted. Instead of taking Leslie home, Olds drove to buy beer, then drove to a park and had Leslie join him for a walk. Leslie was uncomfortable and told Olds she was cold, so they returned to the car where Olds told her he had a crush on her. Olds touched her leg and asked if he could kiss her before taking her home. The State, in its pretrial offer of proof, included a 1991 judgment of conviction entered upon his guilty pleas to false imprisonment and to contributing to the delinquency of a child related to this incident.

¶6 Olds's biological daughter, Amy, testified that in 1991, when she was seven, Olds played an adult movie while she and her friend Lori were having a sleepover, during which Olds began masturbating. Lori confirmed this account in her own testimony. Amy also testified that, during the sleepover, Olds touched her vagina while she was laying down. Again, the State's pretrial offer of proof included a 1992 judgment of conviction entered on Olds's no-contest pleas to

disorderly conduct and to first-degree sexual assault of a child, with two counts of exposing a sex organ to a child dismissed and read in.[2]

¶7      Finally, Olds's niece, Eva, testified that Olds had touched her vagina while they were present in her grandparents' home together in the early 1990s. She was approximately five or six years old at the time, and she did not report it for several years. The State presented pretrial a judgment of conviction relating to that incident for first-degree sexual assault of a child. The State's offer of proof also included Eva's allegation that the touching occurred in a bedroom.

¶8      The jury convicted Olds of two counts of first-degree sexual assault relating to Jennifer and two counts of second-degree sexual assault relating to Sadie. After sentencing, Olds filed a postconviction motion seeking a new trial, asserting that he was denied the effective assistance of counsel by his defense attorney's failure to challenge the admissibility of the other-acts evidence. Olds argued the present allegations were dissimilar in time, place, and circumstance from the other acts so as to render the other-acts evidence inadmissible and highly prejudicial.

¶9      The circuit court held a ***Machner***[3] hearing, at which Olds's trial counsel appeared as a witness. Counsel testified she believed there was no

---

[2] The State's brief represents that this was a 1997 conviction for exposing a sex organ to a child. Olds's brief and his postconviction motion also refer to his convictions being for two counts of exposing genitals, with the first-degree sexual assault of a child charge dismissed. In identifying this as a first-degree sexual assault of a child conviction, we defer to the judgment of conviction submitted with the State's other-acts motion. For purposes of our review, it is immaterial which charges were dismissed and read in because the convictions themselves were not introduced at trial and because the circuit court applied the other-acts admissibility framework set forth in ***State v. Sullivan***, 216 Wis. 2d 768, 576 N.W.2d 30 (1998), to all alleged other acts and instructed the jury as set forth below.

[3] *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

meritorious legal argument to be made as she perceived no basis to argue against the admission of the other-acts evidence given the greater latitude rule applicable in child sexual assault cases. *See* WIS. STAT. § 904.04(2)(b).

¶10     At the conclusion of the hearing, Olds argued the cases in question were too old to be relevant even under the greater latitude rule and the evidence was highly prejudicial. Olds acknowledged that the sexual assault cases involving relatives "[c]ertainly … were similar," but he asserted his conduct in the babysitter case was merely "creepy" and not probative of his having committed the present offenses.

¶11     The circuit court concluded that Olds's trial counsel's decision to object without presenting a legally dubious argument was informed by strategic considerations on her part. Specifically, the court relied on her testimony that she preferred to reserve her legal arguments for matters in which she could take a strong position as courts were more apt to lend credence to her arguments that way. The court deemed this a wise strategy, concluding, "It's more effective when you make your points that you need to make and you don't when you know you really don't have a shot."

¶12     The circuit court also concluded that no argument from defense counsel would have made a difference to its determination that the other-acts evidence was admissible. The court remarked that it was aware of the time difference between the other acts and the present offenses, and it specifically found under the circumstances that their probative value exceeded any temporal concerns. It also concluded Olds would have been convicted of the present offenses regardless of whether the other-acts evidence had been admitted. Olds now appeals.

**DISCUSSION**

¶13    The Sixth Amendment guarantees a defendant the effective assistance of counsel. *State v. Savage*, 2020 WI 93, ¶27, 395 Wis. 2d 1, 951 N.W.2d 838. We review an ineffective assistance of counsel claim using a mixed standard of review. *Id.*, ¶25. The circuit court's factual findings, including those regarding trial counsel's conduct and strategy, will not be overturned unless they are clearly erroneous, but we review de novo whether counsel's conduct constitutes constitutionally ineffective assistance. *Id.*

¶14    To prevail on an ineffective assistance claim, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Id.*; *see also* *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If the defendant fails to establish either prong, we need not address the other. *Savage*, 395 Wis. 2d 1, ¶25.

¶15    To demonstrate deficient performance, the defendant must show that his or her attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.*, ¶28. We presume that counsel's conduct fell within the wide range of reasonable professional assistance, and we will grant relief only upon a showing that counsel's performance was objectively unreasonable under the circumstances. *Id.* Prejudice is demonstrated by showing a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Id.*, ¶32.

¶16    Trial counsel's refusal to present legal argument relating to the State's other-acts motion hinged on the applicability of the greater latitude rule and her conclusion that any argument opposing admission would be frivolous. Generally, evidence of "other crimes, wrongs, or acts is not admissible to prove

6

the character of a person in order to show that the person acted in conformity therewith." WIS. STAT. § 904.04(2)(a). The greater latitude rule has two components, one of which honors this prohibition and one of which acts as an exception to it.

¶17 The first component of the greater latitude rule is found in WIS. STAT. § 904.04(2)(b)1. It provides that for certain offenses, including alleged violations of WIS. STAT. ch. 948, "evidence of any similar acts by the accused is admissible, and is admissible without regard to whether the victim of the crime that is the subject of the proceeding is the same as the victim of the similar act." This paragraph "has been interpreted as requiring compliance with the *Sullivan* test," *State v. Gee*, 2019 WI App 31, ¶27, 388 Wis. 2d 68, 931 N.W.2d 287, which sets forth a three-step framework for determining whether evidence qualifies as the type of other-acts evidence proscribed by § 904.04(2)(a), *see State v. Sullivan*, 216 Wis. 2d 768, 771-73, 576 N.W.2d 30 (1998). If the evidence meets the *Sullivan* criteria, it may be admitted with greater latitude for an "acceptable purpose" (i.e., not character evidence) under § 904.04(2)(a), including establishing motive, intent, opportunity, plan, preparation, knowledge, identity, or absence of mistake or accident. *Gee*, 388 Wis. 2d 68, ¶27.

¶18 The second component of the greater latitude rule, WIS. STAT. § 904.04(2)(b)2., is "an exception to the rule that prohibits other acts evidence from being offered to prove conduct." *Gee*, 338 Wis. 2d 68, ¶22. The catch is that it is limited to cases of first-degree sexual assault and first-degree sexual assault of a child, and the other acts evidence must be both "similar to the alleged violation" and must have resulted in a conviction for the same crime. Sec. 904.04(2)(b)2.; *see also Gee*, 338 Wis. 2d 68, ¶¶22, 28. Logically—given subsec. (2)(b)2.'s nature as an exception to the general prohibition on character evidence being used

to prove conduct—it follows that a full *Sullivan* analysis is not necessary to determine the admissibility of other-acts evidence proffered under subsec. (2)(b)2., but this appears to be as yet undecided. *See Gee*, 388 Wis. 2d 68, ¶43 & n.3.

¶19    Olds suggests there was a meritorious objection to the admission of the other-acts evidence because the State improperly suggested that the evidence was automatically admissible under the greater latitude rule.[4]  Even if there was a basis for such an objection in response to the State's argument,[5] the circuit court's analysis did not apply any sort of automatic admissibility criteria.  Rather, the court carefully and deliberately went through each step of the *Sullivan* framework by:  (1) analyzing whether the State had proved the other acts by a preponderance of the evidence; (2) assessing relevance by evaluating the similarity, complexity, and distinctiveness of the various acts; (3) considering whether the acts were offered for a permissible purpose; and (4) analyzing whether the other acts' probative value was substantially outweighed by considerations of unfair prejudice.

¶20    Our review of the appellate record aligns with the circuit court's postconviction determination that evidence of Olds's sexual misconduct with respect to Amy and Eva would have been admitted regardless of whether Olds's

---

[4] The State notes that its other-acts motion was drafted prior to the Wisconsin Supreme Court's decision in *State v. Dorsey*, 2018 WI 10, 379 Wis. 2d 386, 906 N.W.2d 158, which held that the greater latitude rule under WIS. STAT. § 904.04(2)(b)1. required an analysis using the *Sullivan* framework.  At the motion hearing, the prosecutor alerted the circuit court to the fact that *Dorsey* had been decided.

[5] *See State v. Davidson*, 2000 WI 91, ¶52, 236 Wis. 2d 537, 613 N.W.2d 606 ("Although the greater latitude rule permits more liberal admission of other crimes evidence, such evidence is not automatically admissible.").

trial counsel had attempted to make a more thorough argument.[6] The incidents both involved Olds's surreptitious sexual touching of a minor relative under circumstances that were, in the circuit court's words, "incredibly similar."[7]

¶21 The only arguable point was perhaps the one Olds made at the postconviction hearing: that the convictions were stale. But this was a weak argument given the extraordinary similarity in Olds's conduct, past and present. *See State v. Mink*, 146 Wis. 2d 1, 16, 429 N.W.2d 99 (Ct. App. 1988) (noting remoteness in time does not result in per se inadmissibility and upholding the admission of other acts that took place "over a range of thirteen to twenty-two years prior to the commission of the current crime"); *see also State v. Opalewski*, 2002 WI App 145, ¶¶19-22, 256 Wis. 2d 110, 647 N.W.2d 331 (upholding admissibility of other acts that occurred between twenty-five and fifteen years before the offenses at issue). Even Olds regards *Mink* as a "problematic" case for him, and the circuit court here was certainly aware of the date of the convictions when it decided the State's motion, even without argument by counsel. Olds has

---

[6] Even though it appears from the State's offer of proof that Olds was convicted of the first-degree sexual assault of Amy (which would qualify the evidence to be used to prove conduct under WIS. STAT. § 904.04(2)(b)2.), the circuit court applied the more restrictive greater latitude rule found in § 904.04(2)(b)1. and therefore applied the corresponding *Sullivan* analysis.

Moreover, the court also appears to have applied the *Sullivan* analysis for the evidence regarding Eva, stating that even though that evidence was admissible under the greater latitude rule found in subsec. (2)(b)2., its analysis was the same as the subsec. (2)(b)1. evidence.

[7] Olds argues that, at a minimum, the evidence regarding Olds playing pornography for Amy and Lori and masturbating should have been excluded. Yet this event was related to, and context for, the act of touching that occurred later that evening. Particularly given the greater latitude rule, we are not persuaded that Olds's counsel acted deficiently regarding her assessment of the admissibility of this evidence, and we are certainly not convinced that Olds established *Strickland* prejudice because there was no reasonable probability that the jury would have acquitted Olds of the present offenses even if this information had been excluded. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

failed to establish prejudice arising from his trial attorney's failure to present greater argument supporting his general objection to the admissibility of the Amy and Eva incidents.

¶22    At the postconviction hearing, Olds's counsel focused on the admissibility of the evidence of the babysitter incident, acknowledging that "the babysitter claim is I think a stronger claim." Given our foregoing determination regarding evidence of the Amy and Eva incidents, however, we easily conclude that no prejudice arose from the admission of the babysitter evidence. Given the direct testimony of sexual assaults by Jennifer, Sadie, Amy, and Eva—all of which was, as set forth above, properly admitted into evidence—Leslie's testimony about Olds detaining her and attempting to kiss her was a trivial component of the State's case. Even if it had been wholly excluded, we conclude there is no reasonable probability that the jury would have acquitted Olds of the present offenses.

¶23    Lastly, Olds makes a nominal attempt to establish that the admission of the other-acts evidence violated his due process rights. His due process argument appears to be premised on the notion that "Olds's prior acts … were improperly introduced into evidence against Olds." From this, he argues the jury "likely gave those acts excessive weight in concluding that he was guilty of the crimes charged."

¶24    Any concern about the jury placing improper weight on the other-acts evidence was ameliorated by the circuit court's jury instructions. As to all the other acts, the court stated:

> If you find that this conduct did occur you should consider it only on the issues of motive, opportunity, intent, preparation or plan, knowledge, and/or absence of mistake

> or accident. You may not consider this evidence to conclude that the defendant has a certain character or a certain character trait and that the defendant acted in conformity with that trait or character with respect to the offense charged in this case.

Notably, this instruction was extremely beneficial to Olds as it advised that even the evidence admissible under the WIS. STAT. § 904.04(2)(b)2. greater latitude rule could not be used as character evidence. Our determination that Olds suffered no prejudice as a result of his trial attorney's failure to make any legal argument opposing the admissibility of the other-acts evidence obviates the need to further address his due process argument.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.