# COURT OF APPEALS
# DECISION
# DATED AND FILED

## March 3, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2024AP56-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020CF264

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

JEFFREY M. MCCULLOCH,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Dunn County: CHRISTINA M. MAYER, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jeffrey M. McCulloch appeals from a judgment convicting him, pursuant to a jury verdict, of incest with a child by a stepparent,

first-degree sexual assault of a child, and three counts of repeated sexual assault of the same child. McCulloch also appeals from the circuit court's order denying his motion for postconviction relief. McCulloch seeks a new trial, arguing that the circuit court erred by admitting other-acts evidence that he had assaulted the victim on two occasions in a different county and asserting that defense counsel provided him constitutionally ineffective assistance in four ways. For the reasons that follow, we reject his arguments and affirm.

## BACKGROUND

¶2      The victim in this case, Aspen,[1] alleged that McCulloch had repeatedly sexually assaulted her over an eleven-year period, beginning in 2006 when she was seven years old. Aspen first disclosed the abuse to her college boyfriend, Jacob, in 2018. She also told her cousin, Angela; two counselors; and her mother, Bonnie, about the abuse before reporting the crimes to police in 2020.

¶3      The State charged McCulloch based on Aspen's disclosure to law enforcement, and the case was set for trial. Prior to the trial, the parties litigated several evidentiary issues. First, the State moved, under WIS. STAT. § 904.04(2), to admit other-acts evidence that McCulloch had sexually assaulted Aspen on two occasions at the family's cabin in Ashland County.[2] McCulloch objected to the admission of the Ashland County incidents on the grounds that they were offered

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2023-24), we refer to the victim, the victim's mother, the victim's cousin, the victim's aunt, and the victim's college boyfriend using pseudonyms. All references to the Wisconsin Statutes are to the 2023-24 version.

[2] McCulloch was charged for this conduct in Ashland County Case No. 2020CF196, and he subsequently pled no contest to one count of incest with a child by a stepparent in that case.

2

to show propensity, were prejudicial, and would confuse the jury. After considering the three-part test outlined in *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998), the circuit court allowed Aspen to testify regarding McCulloch's Ashland County conduct.

¶4    Second, the State filed a notice of expert witness testimony for Michelle Harris, a social worker and forensic interviewer. The notice stated that Harris would testify about (1) "Delayed Reporting/Piecemeal disclosure/Non-disclosure"; and (2) the "[e]ffect of trauma on memory." McCulloch challenged the admissibility of Harris's testimony as an expert witness, and the circuit court held a *Daubert*[3] hearing. After reviewing the standards under WIS. STAT. § 907.02(1), the court issued an oral ruling, concluding that Harris's testimony was admissible because she had specialized knowledge about interviewing children, her testimony was relevant to the issues in the case, and her knowledge was based on a reliable foundation.

¶5    Third, the State filed a motion for a pretrial ruling on the admissibility of certain evidence. The motion explained that "[t]he State intends to introduce evidence that during the time period the defendant was sexually abusing the victim," he exhibited "controlling/jealous behaviors" (hereinafter, the motion evidence). According to the State, the motion evidence was "relevant to the defendant's relationship with the victim" and "relate[d] to how his relationship was not that of a parent and child but instead more like a jealous boyfriend." The motion also stated that the State was "filing this motion in anticipation that the defense may object to this evidence [as other-acts evidence] at trial," but it alleged

---

[3] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

that the evidence was not other-acts evidence. Rather, the State contended, "[t]he evidence sought to be admitted … all relates to the defendant's frame of mind in the timeframe that he was assaulting the victim," such "that he viewed her and treated her like a romantic partner and not as a child."

¶6      The circuit court addressed the State's motion on the morning of the first day of trial. Defense counsel objected to both the late filing of the motion and to the prematureness of any ruling on the evidence, as it was unclear how the evidence would be presented and whether there might be other grounds to object. The court agreed that it could not make a ruling "without hearing the surrounding evidence." Therefore, it deferred ruling on the evidence's admissibility until there were objections during the trial.

¶7      The case proceeded to a three-day jury trial in February 2022. The State's first witness was Aspen, who was 23 years old at the time of the trial. Aspen explained that the first time McCulloch sexually assaulted her was in November 2006, when she was seven years old, and she woke up to his hand in her underwear touching her vagina. According to Aspen, after this incident, McCulloch began to have sexual contact with her multiple times every week, usually when he was in her room putting her to bed for the night. Aspen testified that McCulloch "would tell [her] good night and then he would begin to kiss [her]"—"a slow, long kiss" on the mouth—"and then he would begin to touch [her]; sometimes on the outside of [her] pants and sometimes on the inside." Aspen explained that "[a]lmost every time" McCulloch would penetrate her vagina with his hands. She stated that at some point, McCulloch began removing her pants so that she was in just her underwear during these assaults, and eventually McCulloch began taking off his own pants, so he was in just his underwear too.

¶8 According to Aspen, McCulloch would also touch his penis to her vagina while they both were either clothed or in their underwear, either to "just, rub against" her or to engage in what she called "pony rides," where she was "sitting over [the] top of … his groin." Aspen specifically recounted other assaults that she remembered, including one that occurred while Bonnie was taking a bath and that stopped when they heard Bonnie get out of the tub; one when Aspen was older and McCulloch rubbed his groin against her buttocks while they were at McCulloch's business; and one that occurred after a dance team performance at a basketball game during her senior year of high school.

¶9 Aspen also testified regarding the other-acts evidence in Ashland County, which we discuss in more detail below, *see infra* ¶¶25-26, and about the motion evidence. She explained that McCulloch's behavior toward her was "very controlling," as he restricted her ability to engage in after-school activities, go out with friends, or be on her phone at home. According to Aspen, her brother was not treated similarly. McCulloch was also demanding about getting hugs and kisses from her when she left or arrived at home, which only got worse as she got older, and he required "full-on face-to-face hug[s]" instead of "just a side hug" because "then it meant that [she] didn't love him." He required her to text him often and with "a heart emoji," and if she did not, "he would think that [she] didn't love him." Aspen also observed that McCulloch would sometimes talk to her with the "door cracked open" when she was naked before she got in the shower.

¶10 Aspen recounted that she had a boyfriend during her junior year of high school, and McCulloch "told [her] that he wasn't happy that [she] was dating" and that he "didn't like [her] boyfriend" before he met him. In another instance, when she was texting with her boyfriend while watching television with McCulloch, McCulloch threw her phone at their turtle tank, shattering the tank.

Aspen also testified about a time when McCulloch accused her of engaging in inappropriate sexual activity when she accompanied her boyfriend to the door after a New Year's Eve party. On another occasion, McCulloch got upset and refused to watch Aspen compete during a dance competition because her boyfriend was also there, and she was not "showing [McCulloch] enough love."

¶11 Aspen testified that the sexual assaults ended when she moved out of the house and went to college in 2017. She explained that she did not disclose the abuse to anyone while it was occurring, despite being directly asked about sexual abuse by Bonnie; by her aunt, Stacy; and by a counselor in high school. Aspen stated that she did not report the assaults because "[i]t had been going on for so long that I … didn't want people to know that I had let that happen for that long" and "my hope was that it would, just, end once I went to college and I would never have to deal with it again."

¶12 The State also called as witnesses Jacob; Bonnie; one of Aspen's brothers; Angela; Stacy, who was the sister of Aspen's biological father; Diane Stieper, Aspen's college counselor; and Shanna Krueger, Aspen's high school counselor. Overwhelmingly, their testimony confirmed certain aspects of Aspen's testimony. Stacy explained that, after Aspen went to college, Aspen "reached out to [her] for help in relation to her relationship with" McCulloch, and something Aspen said caused Stacy to ask "if [Aspen] had ever been sexually touched by" McCulloch. According to Stacy, Aspen "visually … hesitated and took a minute to pause and got very quiet," but ultimately Aspen denied it.

¶13 Stieper and Krueger both confirmed that Aspen did not disclose any sexual abuse during their initial counseling screenings. But Stieper observed that Aspen's relationship with McCulloch came up in almost every session. Krueger

explained that Aspen "came in with a struggling relationship with her stepfather" and that they specifically addressed how Aspen could be more assertive and confident given McCulloch's excessive text messages. Krueger also testified that, "based on things [Aspen had] shared during her counseling," Krueger recommended that Aspen not have unsupervised contact with McCulloch because she "had a hunch there was more going on." Stieper explained that it did not surprise her that Aspen did not disclose the assaults to her earlier.

¶14 Harris testified, based on both her experience and the research literature, that delayed disclosure of child sexual assault is common, often extending into adulthood. She identified common barriers to disclosure, including doubt that others would believe an initial disclosure, fear of family disruption or economic loss, and the perpetrator's status of a parent or parental figure with power over the child. According to Harris, trauma and feelings of guilt, shame, or embarrassment may also impede disclosure and can result in piecemeal reporting over time. Finally, she testified that prolonged abuse may affect memory for specific incidents and that traumatic events may be compartmentalized as a coping mechanism.

¶15 Rebecca Merryfield, a sheriff's department investigator, was also called to testify. During her testimony, a 40-minute portion of McCulloch's police interrogation was played for the jury, during which McCulloch vehemently denied inappropriately touching Aspen "intentionally" but admitted to having Aspen in his sleeping bag "to stay warm" and to kissing Aspen on the neck and lips.

¶16 After a colloquy with the circuit court, McCulloch waived his right to testify in his own defense. The defense rested without calling any witnesses.

¶17 The circuit court provided instructions to the jury, including the cautionary instruction on other-acts evidence. *See* WIS JI—CRIMINAL 275 (2016). Then, while the jury was deliberating, it sent a note to the court asking to see the transcript of McCulloch's interrogation.[4] No transcript had been admitted into evidence, and after a discussion with the parties about how to proceed, the court advised the jury that the transcript was not in evidence and instructed it to review WIS JI—CRIMINAL 103 (2000), which defines "evidence."

¶18 The jury eventually returned guilty verdicts on all five counts. The circuit court sentenced McCulloch to a total of 35 years' incarceration, consisting of 25 years' initial confinement followed by 10 years' extended supervision.

¶19 McCulloch filed a postconviction motion, alleging ineffective assistance of counsel and requesting a ***Machner***[5] hearing on his motion and a new trial. In a written decision, the circuit court denied the motion without a hearing based on its conclusion that the record demonstrated that McCulloch was not entitled to relief. McCulloch appeals.

## DISCUSSION

¶20 On appeal, McCulloch explains that "[t]his case turned entirely on the jury's assessment of the credibility of [Aspen] and McCulloch," but "the jury's

---

[4] Before asking for the transcript of the interrogation, the jury sent the circuit court a note stating that it was "at an impasse." With the agreement of the parties, the court advised the jury to continue to deliberate, and it informed the jury that it "should make every effort to reach a unanimous verdict." Almost two hours after asking for the transcript, the jury advised the court it was "unable to be unanimous" in its vote, informing the court that it was split ten-to-two. The court responded by reading WIS JI—CRIMINAL 520 (2001), the supplemental instruction on jury agreement.

[5] ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

evaluation of credibility was skewed by" "evidence that it should not have heard and by its lack of a second opportunity to review the video of McCulloch's interrogation." Accordingly, McCulloch argues that the circuit court erroneously exercised its discretion by admitting the other-acts evidence about the two assaults in Ashland County. McCulloch also renews his ineffective assistance of counsel claim, asserting that he is entitled to an evidentiary hearing to address defense counsel's four alleged errors. For the reasons that follow, we reject each of McCulloch's arguments.

## I. Other-acts evidence

¶21 The admission of other-acts evidence is governed by WIS. STAT. § 904.04(2), which prohibits the admission of "evidence of other crimes, wrongs, or acts … to prove the character of a person in order to show that the person acted in conformity therewith." The statute, however, "does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Sec. 904.04(2)(a).

¶22 To determine the admissibility of other-acts evidence, we apply the three-prong test outlined in *Sullivan*. Under that test, other-acts evidence is admissible if: (1) the evidence is offered for a permissible purpose under WIS. STAT. § 904.04(2)(a); (2) the evidence is relevant under WIS. STAT. § 904.01; and (3) the evidence's "probative value is not substantially outweighed by the risk of unfair prejudice under WIS. STAT. § 904.03." *State v. Dorsey*, 2018 WI 10, ¶39, 379 Wis. 2d 386, 906 N.W.2d 158. The State bears the burden of proving the first two prongs of the *Sullivan* analysis, and if it does so successfully, the burden then shifts to the defendant to prove that the probative value of the evidence is

substantially outweighed by the danger of unfair prejudice. *State v. Gutierrez*, 2020 WI 52, ¶35, 391 Wis. 2d 799, 943 N.W.2d 870.

¶23 "[A]longside this general framework, there also exists in Wisconsin law the longstanding principle that in sexual assault cases, particularly cases that involve sexual assault of a child, courts permit a 'greater latitude of proof as to other like occurrences.'" *State v. Davidson*, 2000 WI 91, ¶36, 236 Wis. 2d 537, 613 N.W.2d 606 (citation omitted). The greater latitude rule applies to each part of the *Sullivan* test, and "[t]he effect of the rule is to permit the more liberal admission of other crimes evidence in sex crime cases in which the victim is a child." *Davidson*, 236 Wis. 2d 537, ¶¶51-52.

¶24 We review a circuit court's decision to admit or exclude other-acts evidence for an erroneous exercise of discretion. *State v. Marinez*, 2011 WI 12, ¶17, 331 Wis. 2d 568, 797 N.W.2d 399. We will uphold the court's decision if it "examined the relevant facts, applied a proper standard of law, used a demonstrated rational process and reached a conclusion that a reasonable judge could reach." *Id.* (citation omitted).

¶25 In the first Ashland County incident, Aspen testified that she and McCulloch were alone in the family-owned cabin, and McCulloch pulled her into his sleeping bag. McCulloch was wearing only his underwear, and he proceeded to remove her clothing. Aspen testified that he put his fingers inside her vagina, kissed her on the mouth, and pushed his groin against hers until his penis was "hard" and his underwear was wet. According to Aspen, "while it was happening, [McCulloch] just kept commenting about how [she] must be liking it because [she] was so relaxed," and this was the only time he had said anything to her during an assault.

¶26  In the second incident, other family members were at the cabin, but they had all gone hunting.  According to Aspen, this incident was the only time McCulloch took off all of their clothing, and he began kissing her and "rubbing his penis against [her] vagina."  Aspen "flinched and moved backwards" when McCulloch's penis started to penetrate her, and he stopped and said "he didn't want to hurt [her]."

¶27  On appeal, McCulloch argues that the circuit court erred by admitting the other-acts evidence because the evidence fails *Sullivan*'s first and third prongs.  Given that McCulloch challenges only the first and third prongs of the *Sullivan* analysis, we will narrow our analysis to those two issues.

### A. Permissible purpose

¶28  "As long as the proponent identifies one acceptable purpose for admission of the evidence that is not related to the forbidden character inference, the first step [of the *Sullivan* analysis] is satisfied."  *State v. Payano*, 2009 WI 86, ¶63, 320 Wis. 2d 348, 768 N.W.2d 832 (footnote omitted).  "Consequently, this 'first step is *hardly demanding*.'"  *Id.* (citation omitted).  Permissible purposes are listed in WIS. STAT. § 904.04(2)(a), but that list is not exhaustive, *see Payano*, 320 Wis. 2d 348, ¶63 n.12, and the permissible purposes may also include "context, credibility, and providing a more complete background," *Marinez*, 331 Wis. 2d 568, ¶27.

¶29  We conclude that the circuit court did not erroneously exercise its discretion under the first *Sullivan* prong.  The court outlined each prong of the *Sullivan* test on the record; stated that it considered the facts of the other-acts evidence and researched the case law; and reasonably determined that the other-acts evidence was offered by the State to prove "a plan, a scheme, and a

11

continuing course of action" and to "support the credibility of the victim," which are permissible purposes under WIS. STAT. § 904.04(2)(a) and *Marinez*. Specifically, the court observed,

> [E]very single case that I saw regarding sexual assault and the greater latitude test and the *Sullivan* test addressed sexual assault of another victim; not the same victim. This is sexual assault of the same victim, simply in another county, and so I think that this passes the *Sullivan* test; regardless of the greater latitude test.

The court went on to explain that the other-acts evidence "support[ed] the credibility of the victim. Simply because the parties went on vacation, the alleged sexual assaults didn't stop…. It was an alleged continuing course of action." The greater latitude rule supports the circuit court's exercise of discretion in concluding that the Ashland County conduct was offered for a permissible purpose.

¶30 McCulloch, for his part, concedes that the State identified proper purposes in its motion—"motive, plan or scheme"—but he argues that those purposes are not actually applicable to the other-acts evidence in this case and that "the court cannot list those purposes without explaining how the Ashland County assaults provide[] a motive for McCulloch to commit the assaults in this case or how the Ashland County conduct was a step in a plan to commit the assaults in this case."

¶31 First, as to motive or intent, during McCulloch's interview with law enforcement, when asked if he ever rubbed his penis against Aspen's genitals or put his finger into her vagina, he repeatedly responded that he never did so "intentionally" and that he would never do those things "in a million years." An element of some of the offenses McCulloch was charged with is "sexual contact," which is defined as "intentional touching … either for the purpose of sexually

degrading or sexually humiliating the complainant or sexually arousing or gratifying the defendant." *See* WIS. STAT. §§ 948.01(5), 948.06(1m), 948.025(1). Thus, the other-acts evidence was offered for the admissible purpose of proving that McCulloch's motive was to intentionally touch Aspen for sexual arousal or gratification. *See State v. Hurley*, 2015 WI 35, ¶¶72-73, 361 Wis. 2d 529, 861 N.W.2d 174.

¶32 As to McCulloch's argument that the other-acts evidence does not establish a "plan," we conclude that he utilizes too narrow a definition for that term. McCulloch asserts that the "[s]imilarities between the charged conduct and the other acts [are] not sufficient to demonstrate a common scheme or plan" and that "there are differences between the offenses," including that the Ashland County assaults "involved the only time McCulloch spoke during an assault and the only time he removed his underwear."

¶33 We are not persuaded by McCulloch's argument. First, there is no general rule governing "[t]he required degree of similarity between the other act and the charged offense." *See State v. Opalewski*, 2002 WI App 145, ¶16, 256 Wis. 2d 110, 647 N.W.2d 331 (citation omitted). Further, we disagree that the incidents are insufficiently similar. All of the assaults occurred when Aspen was alone with McCulloch; they all involved McCulloch rubbing his intimate parts on Aspen's intimate parts or touching her intimate parts with his hands; they all occurred when Aspen was a child; and, most importantly, they all involved the same victim.

¶34 McCulloch also cites *State v. Cofield*, 2000 WI App 196, 238 Wis. 2d 467, 618 N.W.2d 214, in support of his position. There, this court noted that the definition of plan "means a design or scheme formed to accomplish some

particular purpose." *Id.*, ¶13 (citation omitted). McCulloch latches onto language from *Cofield* stating that "[t]here must be some evidence that the prior acts were a *step in a plan* leading to the charged offense," but the court also said "or some other result of which the charged offense was but one step." *See id.* (emphasis added). If we consider the "plan" or "result" to be that McCulloch would use Aspen for his own sexual gratification, then the other-acts evidence and the charged offenses were absolutely each a step in that plan. Regardless of that definition, however, the circuit court identified that the other-acts evidence was properly admitted to show a continuing course of conduct, to bolster Aspen's credibility, and to provide context, which are undoubtedly permissible purposes. *See Marinez*, 331 Wis 2d 568, ¶27.

¶35 Nevertheless, McCulloch also argues that admitting the evidence to show a continuing course of conduct is not a permissible purpose and is "simply a proxy for propensity evidence" because "[i]t asks the jury to conclude that if he would commit these assaults at the cabin, then he must be the kind of person who is capable of sexually assaulting his stepdaughter, and he must have also committed the assaults in" this case. We agree with the State that this argument might hold water in a different case, where the other-acts victim and the victim of the charged conduct are different individuals. Here, however, as the State explains, "the record … shows that the circuit court … used the phrase 'continuing course of conduct' … as a way of expressing that the two assaults at the cabin were part of 'an ongoing pattern of sexual assault' against the same victim."

### B. Balancing test

¶36 Moving to the third prong of the *Sullivan* test, the question is whether McCulloch has demonstrated that the other-acts evidence's "probative

value is *substantially outweighed* by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *See Payano*, 320 Wis. 2d 348, ¶80 (quoting WIS. STAT. § 904.03). "The term 'substantially' indicates that if the probative value of the evidence is close or equal to its unfair prejudicial effect, the evidence must be admitted." *Id.* (emphasis omitted). However, as the circuit court also acknowledged, "[n]early all evidence operates to the prejudice of the party against whom it is offered"; the question "is whether the resulting prejudice of relevant evidence is *fair or unfair*." *See id.*, ¶88 (alteration in original; citation omitted).

> Unfair prejudice results when the proffered evidence has a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case.

*Sullivan*, 216 Wis. 2d at 789-90.

¶37 We conclude that McCulloch has failed to establish that the probative value of the other-acts evidence was substantially outweighed by the danger of unfair prejudice. "The probative value of evidence 'is a function of its relevance under WIS. STAT. § 904.01,'" *Marinez*, 331 Wis. 2d 568, ¶41 (citation omitted), and, again, McCulloch does not challenge the circuit court's conclusions that the other-acts evidence was relevant and that it had probative value under *Sullivan*'s second prong. Given that the other-acts evidence involved the same victim and similar conduct, that Aspen was a child when the charged conduct occurred, that McCulloch's charges included an intent element, and that McCulloch told police that he would never "intentionally" touch Aspen in that way, the probative value of the other-acts evidence was significant, and the circuit

15

court reasonably concluded that the probative value was not substantially outweighed by the risk of unfair prejudice. *See* ***State v. Gray***, 225 Wis. 2d 39, 56, 590 N.W.2d 918 (1999) ("Other acts evidence is properly admitted to show absence of mistake if it tends to undermine a defendant's innocent explanation for his or her behavior."); ***Davidson***, 236 Wis. 2d 537, ¶65; *see also* ***State v. Johnson***, 184 Wis. 2d 324, 340, 516 N.W.2d 463 (Ct. App. 1994) ("In most instances, as the probative value of relevant evidence increases, so will the *fairness* of its prejudicial effect.").

¶38     Furthermore, the circuit court provided a cautionary instruction to the jury regarding the proper basis for considering the other-acts evidence, which case law has stated "substantially mitigate[s] any unfair prejudicial effect." *See* ***Hurley***, 361 Wis. 2d 529, ¶89; *see also* ***Dorsey***, 379 Wis. 2d 386, ¶55 ("We presume that jurors follow the instructions given by the court.").[6] Thus, in light of the probative value of the other-acts evidence, the greater latitude rule, and the cautionary instruction, we cannot conclude that the circuit court erroneously exercised its discretion under ***Sullivan***'s third prong.

¶39     McCulloch challenges this conclusion by questioning the State's assertion that the other-acts evidence was not prejudicial because it involved the same victim. For support, McCulloch cites ***Payano***, where the court stated that the "situation in which unfair prejudice is most likely to occur is when one party attempts to put into evidence other acts allegedly committed by the opposing party

---

[6] McCulloch also suggests that the other-acts evidence "could have created confusion about which assaults could be considered to convict, given that most of the charging periods spanned multiple years," but beyond this statement, he does not develop this argument. We need not address undeveloped arguments. *See* ***State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

that are similar to the act at issue in the current case." ***Payano***, 320 Wis. 2d 348, ¶90. The example the ***Payano*** court provided, however, was in ***State v. McGowan***, 2006 WI App 80, ¶¶1, 23-24, 291 Wis. 2d 212, 715 N.W.2d 631, where "the prosecution was allowed to introduce evidence suggesting that the defendant had assaulted a different female cousin when he was 10 and she was 5." ***Payano***, 320 Wis. 2d 348, ¶90. This court concluded that the circuit court erred by admitting the other-acts evidence because we were "concerned that the jury, after hearing evidence of another heinous sexual assault of a young child, would decide to punish the defendant based on that fact alone rather than the facts comprising the current charges." ***Id.***, ¶91.

¶40　The circumstances described in ***Payano*** are not similar to those in this case; neither ***Payano*** nor ***McGowan*** involved other-acts evidence with the *same victim* as the charged offense. Thus, we are not persuaded by McCulloch's argument that, based on ***Payano***'s holding, unfair prejudice occurred in this case.

¶41　Next, McCulloch argues that the other-acts evidence is unfairly prejudicial because "it appeals to the jury's sympathies, arouses its sense of horror, [and] provokes its instinct to punish." According to McCulloch, "the testimony about the Ashland County assaults described vivid and horrific details about the assaults that took place." For example, "[t]he jury heard that the victim was told 'she must be liking it' and that she flinched in pain," which details "were largely absent from the testimony about the allegations McCulloch was on trial for in this case," and "[t]hose are also the types of details that once heard by the jury cannot be simply erased from their minds because of an instruction at the close of evidence." "Thus," McCulloch contends, "the jury would have been horrified and would have had a desire to punish after hearing that testimony."

¶42 As we determined above, the Ashland County other-acts evidence was highly probative, *see supra*, ¶37, and we agree with the circuit court's assessment that it did not "see these acts as substantially different." The Ashland County incidents when Aspen was a teenager were not especially "vivid and horrific," especially in comparison to the charged conduct where Aspen alleged weekly sexual assaults beginning at age seven. Thus, the probative value of the other-acts evidence was not substantially outweighed by the danger of unfair prejudice, especially given the greater latitude rule. *See **Gutierrez***, 391 Wis. 2d 799, ¶36 (citing ***State v. Veach***, 2002 WI 110, ¶91, 255 Wis. 2d 390, 648 N.W.2d 447, for the proposition "that even 'graphic, disturbing, and extremely prejudicial' testimony detailing a similar other act of child sexual assault is admissible under the greater latitude rule").

¶43 In summary, the circuit court applied the correct legal standard, considered the relevant facts, and reasonably concluded that the Ashland County other-acts evidence was admissible. McCulloch's challenge to his conviction on this basis fails.

## II. Ineffective assistance of counsel

¶44 McCulloch next argues that the circuit court erred by denying him a *Machner* hearing on his ineffective assistance of counsel claim. "When a circuit court summarily denies a postconviction motion alleging ineffective assistance of counsel without holding a *Machner* hearing, the issue for the court of appeals … is whether the defendant's motion alleged sufficient [material] facts entitling him to a hearing." ***State v. Sholar***, 2018 WI 53, ¶51, 381 Wis. 2d 560, 912 N.W.2d 89; ***State v. Allen***, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d

433. This determination is a question of law that we review de novo. *State v. Sulla*, 2016 WI 46, ¶23, 369 Wis. 2d 225, 880 N.W.2d 659.

¶45 If a defendant's motion asserting ineffective assistance "does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *Id.* (citation omitted). "We review a circuit court's discretionary decisions under the deferential erroneous exercise of discretion standard." *Id.* (citation omitted).

¶46 A defendant claiming ineffective assistance of counsel must prove both that his or her counsel's representation was deficient and that he or she suffered prejudice as a result of that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to establish deficient performance, the defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* To prove prejudice, the defendant must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. However, "a defendant need not prove the outcome would 'more likely than not' be different in order to establish prejudice in ineffective assistance cases." *Sholar*, 381 Wis. 2d 560, ¶44 (citation omitted).

¶47 Our review of an ineffective assistance of counsel claim "is a mixed question of fact and law." *State v. Erickson*, 227 Wis. 2d 758, 768, 596 N.W.2d

749 (1999). "We will not disturb the circuit court's findings of fact unless they are clearly erroneous." *Id.* Whether an attorney rendered constitutionally ineffective assistance under the *Strickland* standard is a question of law that we review independently. *Erickson*, 227 Wis. 2d at 768.

¶48 As an initial matter, and as a foundation for our discussion below, we wish to address McCulloch's statement that the circuit court was "critical" of his ineffective assistance of counsel arguments, which, McCulloch admits, allege that "counsel should have made different objections than he did." According to McCulloch, because he "cannot make an argument on appeal that his [defense] counsel did not make in the circuit court," *see State v. Rogers*, 196 Wis. 2d 817, 826-29, 539 N.W.2d 897 (Ct. App. 1995), he "must allege ineffective assistance of counsel to preserve the issue for appeal," "even though [his defense] counsel attempted to exclude the evidence at issue."

¶49 McCulloch's argument improperly conflates forfeiture with ineffective assistance of counsel. Although a party may not raise on appeal an evidentiary argument that was not presented to the circuit court as a basis to overturn the court's decision, ineffective assistance is not established merely because appellate counsel identifies a different objection that defense counsel could have made. *Rogers* addresses issue preservation, not constitutional deficiency of counsel, and does not convert every unraised evidentiary theory into an ineffective assistance of counsel claim. As will be made clear below, for most of his ineffective assistance of counsel arguments, McCulloch concedes that defense counsel objected to the evidence and sought its exclusion. He fails, however, to argue that the objections defense counsel actually made were unreasonable.

### A. The motion evidence

¶50    First, McCulloch argues that his defense counsel was constitutionally ineffective because he failed to properly object to the motion evidence. As noted above, *see supra* ¶¶5, 9-10, the State sought a pretrial ruling on the admissibility of the motion evidence, and, as McCulloch admits, his defense counsel successfully objected to the motion. McCulloch further concedes that, at trial, "counsel made some hearsay objections to specific questions or answers regarding some of this evidence." Nevertheless, McCulloch argued in his postconviction motion that defense counsel performed deficiently because "he did not object to [the motion evidence's] admission generally on the ground it was inadmissible under [WIS. STAT. §] 904.04," he did not argue that the motion evidence was unfairly prejudicial, and he did not request a cautionary instruction to tell the jury that the motion evidence should be considered for "context or background, and not as evidence of [McCulloch's] character or propensity."

¶51    First, we emphasize McCulloch's admissions that defense counsel objected to the State's attempt to obtain a pretrial ruling on the admissibility of the motion evidence, that his objection was successful because the circuit court did not grant the State's motion, and that counsel continued to object to some of the evidence as it came up at trial. McCulloch does not argue that the objections that defense counsel *did make* before the circuit court were unreasonable. Because McCulloch challenges only the sufficiency of counsel's objections, rather than their objective reasonableness, he fails to allege deficient performance under *Strickland*.

¶52    Furthermore, we conclude that McCulloch has also failed to sufficiently allege that his defense counsel performed deficiently because the

21

motion evidence was not other-acts evidence under WIS. STAT. § 904.04(2) subject to a *Sullivan* analysis.[7] "[S]imply because an act can be factually classified as 'different'—in time, place and, perhaps, manner than the act complained of—that different act is not necessarily 'other acts' evidence in the eyes of the law"; instead, "[w]hen the State or the defense offers a 'different' act to show a similarity *between that other act and the act complained of*, then it is properly termed 'other acts evidence.'" *State v. Bauer*, 2000 WI App 206, ¶7 n.2, 238 Wis. 2d 687, 617 N.W.2d 902 (emphasis added).

¶53 The motion evidence was "part of the panorama of evidence needed to completely describe the crime that occurred and is thereby inextricably intertwined with the crime." *See State v. Dukes*, 2007 WI App 175, ¶28, 303 Wis. 2d 208, 736 N.W.2d 515. The motion evidence was not submitted to demonstrate that McCulloch had a certain character trait, such an interest in sexually assaulting children, and that he "acted in conformity therewith." *See* WIS. STAT. § 904.04(2). In other words, the motion evidence, which McCulloch said tended to show his "mean and demeaning behavior," does not "show a similarity" to the charged sexual assaults. *See Bauer*, 238 Wis. 2d 687, ¶7 n.2. Instead, the motion evidence provided context and was submitted to "completely describe" how McCulloch treated Aspen and the nature of his relationship with her because, as the State explained in its motion, the evidence had a tendency to make it more probable that McCulloch had sexually abused Aspen because he was acting like a "jealous boyfriend." *See Dukes*, 303 Wis. 2d

---

[7] Further, because this evidence was not other-acts evidence, the State was not required to file the motion in advance of trial. Therefore, to the extent McCulloch argues that the motion was untimely, that argument has no merit.

208, ¶28.  Given our conclusion that the motion evidence was not other-acts evidence, we reject all of McCulloch's arguments on this issue related to the *Sullivan* analysis.  *See State v. Wheat*, 2002 WI App 153, ¶14, 256 Wis. 2d 270, 647 N.W.2d 441 (stating that counsel is not ineffective for failing to make meritless arguments).

¶54    Finally, McCulloch characterized all the motion evidence as evidence that "shows McCulloch to be a difficult, controlling, profane, and angry man generally."   As a result of this characterization, he argued in his postconviction motion that all the evidence had a "very slight probative value" that was "outweighed by the danger of unfair prejudice and the evidence should have been excluded."

¶55    The motion evidence was not admitted collectively at trial, however.  The motion evidence was offered individually as the witnesses were asked questions.  Therefore, we must look at each item of evidence to determine whether defense counsel performed deficiently by allowing the evidence to be admitted.  We concur with the State that all evidence is still subject to WIS. STAT. § 904.03's balancing test, *see Davidson*, 236 Wis. 2d 537, ¶34, and, therefore, "[a] separate analysis is required for each piece of evidence," *see State v. Jackson*, 2014 WI 4, ¶57, 352 Wis. 2d 249, 841 N.W.2d 791.  McCulloch's postconviction motion not only failed to outline which evidence defense counsel actually objected to, but it also failed to present an argument for each piece of evidence that he argued was erroneously admitted.

¶56    McCulloch states in his reply brief on appeal that "that is just why a *Machner* hearing is required," because then "[c]ounsel could be asked about each piece of evidence that was admitted and why he did not object."  Our case law,

however, does not sanction a fishing expedition at a *Machner* hearing without first setting forth sufficient facts to allege a prima facie case of ineffective assistance of counsel.

### B. Rebuttal witness

¶57 Next, McCulloch argues that defense counsel performed deficiently "by failing to fully develop his objection to allowing [Angela] to testify because she was not a bona fide rebuttal witness." On the second day of trial, outside the presence of the jury, the State informed the circuit court that it would like to call Angela to testify, but it admitted that she was not on its original witness list. Instead, the State argued that it could call Angela as a rebuttal witness because "the defense ha[d] adequately put forward" the theory, during cross-examination, "that the victim made up the assaults." Additionally, the State understood the defense to be "putting forward a theory that [Aspen] was motivated to disclose to her counselor the sexual abuse … because of some motive related to her mom wanting a divorce or some discussion about a divorce." Therefore, the State planned to call Angela to testify that Aspen informed her of the sexual assaults around December 2019 and that Aspen asked Angela "not to say anything to anybody" because "she didn't want it to ruin their family."

¶58 After taking the issue under advisement, the circuit court determined that Angela was a bona fide rebuttal witness because her testimony "goes to the issue of whether or not [Aspen] is telling the truth and when she disclosed." The court noted that it had researched the issue, and it cited *State v. Hatcher*,

No. 2015AP297-CR, unpublished slip op., ¶35 (WI App Aug. 16, 2016),[8] reading that case to hold that the court has discretion to allow the State to call a rebuttal witness even if the defendant does not call any witnesses.

¶59     In response, defense counsel argued that Angela was not a bona fide "rebuttal witness because rebuttal does not come in as part of the [S]tate's case-in-chief." He also asserted that the State had already put forward similar evidence from Jacob, Bonnie, and Stieper, and he argued that Angela did not meet the standard under *Hatcher*.

¶60     In his postconviction motion, McCulloch conceded that defense counsel "cited the relevant legal standard in his initial argument that [Angela] was not a bona fide rebuttal witness, and [he] continued to argue even after the court provided a copy of *Hatcher* that, factually, [Angela] did not meet that standard." Nevertheless, McCulloch faulted defense counsel for failing to "argue that the court should not rely on *Hatcher*'s conclusion that the defense raising an issue on cross-examination could make rebuttal evidence necessary and appropriate." He specifically argued that "*Hatcher* is not binding authority, but is citable only for its persuasive value"; "none of the binding published authority on bona fide rebuttal evidence involves a situation where the rebuttal evidence was *not* offered in response to the defendant's case-in-chief"; and "*Hatcher* contains scant analysis and reasoning." *See id.*, ¶¶28-35. Thus, he argues that his counsel "should have developed this argument because it is based on facts and law upon which an ordinarily prudent lawyer would have relied."

---

[8] An unpublished opinion that is authored by a member of a three-judge panel and issued on or after July 1, 2009, may be cited for its persuasive value. WIS. STAT. RULE 809.23(3)(b).

¶61   We conclude that defense counsel did not perform deficiently by failing to make a *different* objection to Angela's testimony.  As the State asserts,

> McCulloch acknowledged that counsel cited the statute requiring disclosure of witnesses, argued that "the [S]tate should not be allowed to amend the witness list during trial," presented two arguments based on case law to show "that [Angela] was not a proper rebuttal witness," and argued in the alternative that the [S]tate had already elicited "similar evidence to rebut the defense theory" from three witnesses.

(Citation omitted.)   McCulloch does not argue that any of the objections or arguments counsel actually made were unreasonable, legally deficient, or outside the wide range of professionally competent assistance.  Instead, he explains in his reply brief that he has "identified a different way [defense counsel] could have successfully achieved" the goal of excluding Angela's testimony and that "he raised the issue as ineffective assistance of counsel in order to avoid an argument from the [S]tate that his objection was waived."

¶62   Again, McCulloch's contention misunderstands the purpose and limits of an ineffective assistance of counsel claim.  Ineffective assistance of counsel is not established by showing that counsel could have made a different or additional argument after the fact, particularly where counsel objected and fully litigated the issue.  The constitutional inquiry is not whether an alternative objection might have been available or more successful, but the inquiry is whether the objection counsel chose to make was objectively unreasonable.  A constitutionally sufficient attorney does not require the best possible objection, the most creative argument, or an error-free performance.  *See State v. Williquette*, 180 Wis. 2d 589, 605, 510 N.W.2d 708 (Ct. App. 1993) ("Counsel need not be perfect, indeed not even very good, to be constitutionally adequate." (citation omitted)).  Courts must evaluate counsel's performance with substantial deference

and may not employ the "distorting effects of hindsight." ***State v. Thiel***, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305 (citation omitted).

¶63 Here, defense counsel objected and argued against Angela testifying as a rebuttal witness, and the fact that counsel may have had other bases to do so does not constitute ineffective assistance of counsel. Further, the circuit court was aware that ***Hatcher*** is an unpublished—but authored—decision, and, therefore, it was aware that it could only rely on the case for persuasive authority. Pointing out that fact to the court—i.e., essentially arguing that it was erroneously persuaded by the only legal authority it found on an unsettled question—seems to be the most tenuous argument and the one least likely to succeed. Regardless, as McCulloch admits, the law is unsettled in this area, and counsel is not required to take action in an area where the law is unsettled. *See **State v. Hanson***, 2019 WI 63, ¶29, 387 Wis. 2d 233, 928 N.W.2d 607; ***State v. Maloney***, 2005 WI 74, ¶¶26, 28-29, 281 Wis. 2d 595, 698 N.W.2d 583. Therefore, whether counsel made no argument or made the wrong argument, any alleged failure in this regard cannot constitute deficient performance.

*C. Expert witness*

¶64 Similarly, McCulloch next argues that his defense counsel performed deficiently by failing to present proper arguments to support his objection to admitting Harris's expert testimony. According to McCulloch, although defense counsel objected to Harris's testimony, and convinced the circuit court to hold a ***Daubert*** hearing, counsel should have challenged the testimony as exposition testimony under ***State v. Dobbs***, 2020 WI 64, ¶43, 392 Wis. 2d 505,

945 N.W.2d 609, rather than WIS. STAT. § 907.02.[9] In his postconviction motion, McCulloch argued that Harris gave exposition testimony because she "was intended to 'educate' the jury about topics putatively outside of common knowledge rather than offer a specific opinion about [Aspen's] conduct or case, which she did not review." McCulloch further contended that because his counsel did not explicitly cite the four-factor test in *Dobbs*, the court applied the wrong legal standard.

¶65 On this issue, we conclude that McCulloch's postconviction motion failed to sufficiently allege deficient performance by defense counsel. First, McCulloch's arguments appear to focus on why the *circuit court* erred by admitting Harris's testimony, rather than identifying an objective failure by defense counsel. We understand McCulloch to argue that defense counsel's alleged deficiencies led to the court's error, but his position in this regard is merely a symptom of his flawed reasoning.

¶66 As before, McCulloch admits that defense counsel "reasonably objected to Harris's testimony, in his written arguments, at the *Daubert* hearing, and later at trial." This concession is significant. Nevertheless, McCulloch again posits that "counsel failed to [make] the *proper* challenges to Harris's testimony."

---

[9] Our supreme court explained in *State v. Dobbs*, 2020 WI 64, ¶43, 392 Wis. 2d 505, 945 N.W.2d 609, that

> [w]hen expert testimony is proffered in the form of an exposition on general principles, the circuit court, as gatekeeper, must consider the following four factors: (1) whether the expert is qualified; (2) whether the testimony will address a subject matter on which the factfinder can be assisted by an expert; (3) whether the testimony is reliable; and (4) whether the testimony will "fit" the facts of the case.

(Emphasis added.) McCulloch contends that defense counsel should have framed his objection differently, but *Dobbs* merely clarified the circuit court's existing gatekeeping duties under WIS. STAT. § 907.02(1) as applied to exposition testimony. Further, our supreme court explained in *Dobbs* that the "considerations differ [only] slightly from the considerations to admit opinion testimony of an expert." *See Dobbs*, 392 Wis. 2d 505, ¶43 n.20.[10]

¶67     By successfully moving for a *Daubert* hearing and challenging the reliability and qualifications of the witness, defense counsel effectively triggered the circuit court's gatekeeping function, which is strong evidence of effective advocacy. As we have said, ineffective assistance is not established by showing that counsel failed to make every conceivable argument. For these reasons, McCulloch has failed to sufficiently allege deficient performance.

### D. Jury deliberations

¶68     Finally, McCulloch argues that defense counsel "performed deficiently by failing to assure [that] the deliberating jury was told it could review the recording of McCulloch's interrogation" with police. According to McCulloch, when the jury asked to see the transcript of McCulloch's interrogation, defense counsel was aware of the option to have the recording

---

[10] We note that McCulloch's postconviction motion did not describe how and why the circuit court would have reached a different result under the *Dobbs* standard *as compared to* WIS. STAT. § 907.02. He merely argued in his postconviction motion that Harris was not qualified to testify on issues regarding memory and that her testimony was not relevant because the reasons someone would delay reporting a sexual assault are now well understood and Aspen actually testified as to her own reasons for not disclosing McCulloch's conduct earlier. Whether a witness is qualified and whether their testimony will assist the trier of fact are both questions considered under either standard. *Compare State v. Hogan*, 2021 WI App 24, ¶19, 397 Wis. 2d 171, 959 N.W.2d 658, *and* WIS. STAT. § 907.02, *with Dobbs*, 392 Wis. 2d 505, ¶43.

played again for the jury, and he contends that failing to ask the court for this option constituted deficient performance. *See State v. Anderson*, 2006 WI 77, 291 Wis. 2d 673, 717 N.W.2d 74, *overruled on other grounds by*, *State v. Alexander*, 2013 WI 70, 349 Wis. 2d 327, 833 N.W.2d 126. Therefore, according to McCulloch, because of defense counsel's deficient performance, "the jury never heard the recording again, and ultimately they returned a verdict without benefitting from the opportunity to refresh or clarify their recollections of the defendant's statements," resulting in prejudice to McCulloch.

¶69 On this issue, we resolve the question on the prejudice prong. We conclude that McCulloch is not entitled to a *Machner* hearing on the jury deliberation issue because he has failed to sufficiently allege prejudice with respect to his defense counsel's handling of the jury's request to review the transcript of his police interview. We agree with the State that McCulloch's argument is speculative and, therefore, fails to satisfy the prejudice prong. *See State v. Leighton*, 2000 WI App 156, ¶38, 237 Wis. 2d 709, 616 N.W.2d 126 ("A defendant must base a challenge to counsel's representation on more than speculation."); *Erickson*, 227 Wis. 2d at 774.[11]

---

[11] McCulloch disputes that his argument is speculative, asserting that "we know that [the] jury was interested in reviewing McCulloch's statement to police because they specifically asked about it"; therefore, he contends that "[i]t is not mere speculation to say that reviewing his side of the story as they deliberated would have mattered." We disagree. First, the prejudice standard is not whether it "would have mattered." As we explained above, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland v. Washington*, 466 U.S. 668, 693 (1984). Further, it is just as likely that the jury asked to review the transcript because the ten jurors who originally voted to convict McCulloch were trying to convince the two remaining jurors to vote guilty by reminding them of statements he made during his interview. *See supra* note 4.

¶70 Even if defense counsel had requested that the jury be told it could rewatch the video, there is no evidence that the circuit court would have granted that request, and McCulloch presents no legal authority in support of the proposition that the court would have been required to do so. *See Anderson*, 291 Wis. 2d 673, ¶30 (stating that whether to "allow a jury to replay a recording during deliberations" is an exercise of discretion). Furthermore, McCulloch's argument assumes that if the jury had reviewed the video again, the result would have been a different trial outcome, but that argument emphasizes McCulloch's police interrogation over all the other evidence presented at trial. Moreover, the jury had already seen the interview, and there is nothing in McCulloch's postconviction motion or the record to suggest that the jury would have reached a different decision merely by viewing it again.[12]

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[12] McCulloch also argues that the circuit court improperly "assumed trial counsel had a strategic decision for making the decision" not to request that the jury rewatch the interrogation video. Strategic reasons for counsel's decisions or actions are established only through testimony at a *Machner* hearing. *See Machner*, 92 Wis. 2d at 804 ("We hold that it is a prerequisite to a claim of ineffective representation on appeal to preserve the testimony of trial counsel. We cannot otherwise determine whether trial counsel's actions were the result of incompetence or deliberate trial strategies."). The State concedes that the court erred on this point, and we agree. Given that we conclude that McCulloch has failed to establish prejudice on this issue, not deficient performance, we will not address this issue further. *See State v. Earl*, 2009 WI App 99, ¶18 n.8, 320 Wis. 2d 639, 770 N.W.2d 755 ("[W]e may affirm on different grounds than those relied on by the [circuit] court.").